In the

# United States Court of Appeals
## For the Seventh Circuit

No. 07-1863

PELIVAN CETA,

*Petitioner*,

*v.*

MICHAEL B. MUKASEY, Attorney
General of the United States,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A76-785-760

ARGUED MAY 30, 2008—DECIDED JULY 25, 2008

Before BAUER, RIPPLE and WOOD, *Circuit Judges*.

RIPPLE, *Circuit Judge.* Pelivan Ceta, a citizen of Albania, conceded removability at his most recent hearing with an immigration judge ("IJ"), and he attempted to apply for adjustment of status based on his marriage to an American citizen. Alternatively, Mr. Ceta requested termination of the proceedings without prejudice or a continuance pending the approval of his Petition for Alien Relative ("I-130"). The IJ concluded that Mr. Ceta was categorically ineligible under a then-existing regulation to apply for adjustment of status, and therefore the IJ

also denied Mr. Ceta's request for termination or a continuance.

Mr. Ceta then appealed the decision of the IJ to the Board of Immigration Appeals ("Board" or "BIA") and submitted an approved I-130. While Mr. Ceta's appeal was pending, the regulation that categorically had prevented him from eligibility for adjustment of status was repealed. In a brief, per curiam order, the BIA explained that, because of the regulatory change, Mr. Ceta now was eligible to apply for adjustment, but he had to pursue his adjustment application with the United States Citizenship and Immigration Service ("USCIS"). The Board therefore affirmed the IJ's decision that the IJ did not have jurisdiction to consider the adjustment application. The BIA also affirmed the IJ's denial of Mr. Ceta's request for termination or a continuance.

Mr. Ceta now petitions for review of the decision of the BIA denying his application for adjustment of status and his motion for termination of the proceedings or a continuance. For the reasons set forth in this opinion, we grant Mr. Ceta's petition for review.

# I

# BACKGROUND

Mr. Ceta, a citizen of Albania, arrived at Chicago's O'Hare International Airport in 1998 and immediately requested asylum or withholding of removal on the ground that he had been persecuted in Albania for supporting the Democratic Party. The immigration authorities ultimately charged Mr. Ceta as removable on the alternative grounds that he (1) had attempted to gain entry into the

United States by fraudulently or willfully misrepresenting a material fact[1]; (2) did not have a valid, unexpired immigrant visa[2]; (3) did not have a valid passport[3]; and (4) did not have a valid non-immigrant visa.[4] Mr. Ceta conceded removability under charges (2) and (4) because he did not have a valid visa of any kind; nevertheless, he denied attempting to enter the United States by means of a fraudulent or willful misrepresentation and also denied not being in possession of a valid passport.

After a hearing, an IJ found that Mr. Ceta was not credible and that he was removable on each of the four different grounds, including that he had tried to enter the United States by using a fraudulent passport. The IJ also denied Mr. Ceta's request for asylum. Mr. Ceta appealed. The BIA subsequently concluded that the IJ's adverse credibility determination was not sustainable, but it nonetheless upheld the denial of relief and the finding of a fraudulent or willful misrepresentation.

In his petition for review to this court, Mr. Ceta challenged both determinations. Although we sustained the denial of Mr. Ceta's asylum application, we overturned the determination of removability for attempting to gain entry through fraud or willful misrepresentation. *See Ceta v. Ashcroft*, No. 03-3066, 117 Fed. App'x 478 (7th Cir. 2004) (unpublished). We remanded the case to the BIA, which, in turn, remanded to the IJ.

---

[1]  *See* Immigration and Nationality Act § 212(a)(6)(C)(i) (codified at 8 U.S.C. § 1182(a)(6)(C)(i)).

[2]  *See id.* § 212(a)(7)(A)(i)(I).

[3]  *See id.* § 212(a)(7)(B)(i)(I).

[4]  *See id.* § 212(a)(7)(B)(i)(II).

On October 27, 2005, Mr. Ceta appeared before the IJ, and he conceded that he was inadmissible. Mr. Ceta then attempted to file for adjustment of status, pursuant to 8 U.S.C. § 1255, based on his marriage to an American citizen. Mr. Ceta recognized that a then-existing regulation, 8 C.F.R. § 1245.1(c)(8) (2004) [the "regulation"],[5] categorically prohibited him from applying for adjustment of status. This regulation provided that "[a]ny alien who seeks to adjust status based upon a marriage which occurred on or after November 10, 1986, and while the alien was in exclusion, deportation, or removal proceedings" was "ineligible to apply for adjustment of status to that of lawful permanent resident under section 245 of the Act." 8 C.F.R. § 1245.1(c)(8). Mr. Ceta argued that this regulation was inconsistent with the Immigration and Nationality Act ("INA" or the "Act"). In support of this argument, Mr. Ceta relied on *Succar v. Ashcroft*, 394 F.3d 8 (1st Cir. 2005), and *Bona v. Gonzales*, 425 F.3d 663 (9th Cir. 2005), which had struck down the regulation as inconsistent with the Act. Alternatively, Mr. Ceta requested that the IJ terminate the proceedings without prejudice or grant him a continuance to give him

---

[5]  8 C.F.R. § 1245.1(c)(8) was a regulation governing the Executive Office for Immigration Review ("EOIR"), which includes the immigration courts and the Board of Immigration Appeals ("BIA"). There was an identical provision, 8 C.F.R. § 245.1(c)(8), a Department of Homeland Security ("DHS") regulation, which applied to all immigration agencies within the DHS. Under the Homeland Security Act of 2002, all of the responsibilities of the former Immigration and Naturalization Service were transferred to the DHS. 6 U.S.C. §§ 275, 291, 521. The Homeland Security Act, nevertheless, retained the EOIR under the authority of the Department of Justice. 8 U.S.C. § 1103(a), (g).

time to pursue his I-130.[6] The Department of Homeland Security ("DHS") opposed Mr. Ceta's application on the ground that the regulation, which was valid under Seventh Circuit precedent, categorically denied arriving aliens, such as Mr. Ceta, eligibility for adjustment of status. The DHS further submitted that the IJ did not have jurisdiction to consider arguments about the validity of this regulation.

The IJ determined that the regulation conclusively established that Mr. Ceta was ineligible to apply for adjustment of status. Although Mr. Ceta contended that the regulation was contrary to the Act, the IJ determined that he did not have jurisdiction to consider such an argument. The IJ also denied Mr. Ceta's request for termination without prejudice or a continuance on the ground that Mr. Ceta "was not eligible for adjustment of status before the Immigration Court." A.R. at 44.

Mr. Ceta appealed the IJ's decision to the BIA. While Mr. Ceta's appeal was pending but before he filed his brief with the Board, the Secretary of Homeland Security (the "Secretary") and the Attorney General issued an Interim Rule amending the regulation that had made arriving aliens, such as Mr. Ceta, categorically ineligible for adjustment of status. *See Eligibility of Arriving Aliens in Removal Proceedings to Apply for Adjustment of Status and Jurisdiction to Adjudicate Applications for Adjustment of*

---

[6] There was a considerable amount of confusion during this hearing before the IJ because Mr. Ceta was being represented by new counsel. At the time of this hearing, in fact, Mr. Ceta's Petition for Alien Relative ("I-130") already had been approved for over three years. A.R. at 14. (I-130 approval notice dated January 9, 2002).

*Status*, 71 Fed. Reg. 27,585 (May 12, 2006) [hereinafter *Interim Rule Notice*]. The *Interim Rule Notice* recognized that four courts of appeals had struck down 8 C.F.R. § 1245.1(c)(8) as inconsistent with INA § 245(a), 8 U.S.C. § 1255(a),[7] and it stated that the Interim Rule was intended

---

[7]  *See Scheerer v. U.S. Attorney Gen.*, 445 F.3d 1311, 1322 (11th Cir. 2006); *Bona v. Gonzales*, 425 F.3d 663, 670-71 (9th Cir. 2005); *Zheng v. Gonzales*, 422 F.3d 98, 119-20 (3d Cir. 2005); *Succar v. Ashcroft*, 394 F.3d 8, 13 (1st Cir. 2005). The First and Ninth Circuits observed that Congress, in enacting the INA, carefully and unambiguously had defined by statute the categories of aliens eligible to apply, in the first instance, for adjustment of status. Among those categories of aliens are parolees; parolees, as a matter of course, almost always are placed in removal proceedings. Therefore, the repealed regulation, 8 C.F.R. § 1245.1(c)(8), which excluded all parolees placed in removal proceedings from eligibility for adjustment of status, was contrary to Congress' clearly expressed intent and failed the first step of the *Chevron* analysis. *Bona*, 425 F.3d at 668-71; *Succar*, 394 F.3d at 24-30.

The Third and Eleventh Circuits also held the regulation invalid, but they did so under *Chevron*'s second step. These courts found that section 1255(a) was ambiguous with respect to the Attorney General's ability to regulate eligibility for adjustment of status. These courts, nevertheless, held that the regulation was an unreasonable construction of the statute. Because Congress intended for virtually all parolees to be placed in removal proceedings and because section 1255(a) indicates that parolees, as a class, are eligible to apply for adjustment of status, the Attorney General could not make parolees placed in removal proceedings, as a class, ineligible for adjustment of status. *Scheerer*, 445 F.3d at 1318-22; *Zheng*, 422 F.3d at 117-20.

In contrast, the Fifth and Eighth Circuits upheld 8 C.F.R. § 1245.1(c)(8). *Akhtar v. Gonzalez*, 450 F.3d 587 (5th Cir. 2006);

(continued...)

to resolve the inter-circuit conflict. The Interim Rule, accordingly, repealed 8 C.F.R. § 1245.1(c)(8) and substituted 8 C.F.R. § 1245.2(a)(1)(ii)[8] [hereinafter "amended regulation"]. The amended regulation provides that an IJ generally does not have jurisdiction to adjudicate an application for adjustment of status filed by an arriving alien in removal proceedings.[9] 8 C.F.R. § 1245.2(a)(1)(ii). These aliens, instead, must file their application for adjustment of status with the USCIS, independent of the removal proceedings. 8 C.F.R. § 245(a)(1). The amended regulation is applicable to all cases pending on administrative or judicial review on or after May 12, 2006. *Interim Rule Notice*, 71 Fed. Reg. at 27,588. The notice also explained that

---

[7] (...continued)
*Mouelle v. Gonzalez*, 416 F.3d 923, 930 (8th Cir. 2005), *vacated* 548 U.S. 901 (U.S. June 26, 2006) (granting certiorari, vacating and remanding for consideration in light of the amended regulation).

[8] The Interim Rule also repealed 8 C.F.R. § 245.1(c)(8) and substituted 8 C.F.R. § 245.2(a). *Eligibility of Arriving Aliens in Removal Proceedings to Apply for Adjustment of Status and Jurisdiction to Adjudicate Applications for Adjustment of Status*, 71 Fed. Reg. 27,585 (May 12, 2006) [hereinafter *Interim Rule Notice*]. Under the Interim Rule, section 245.2(a)(1) focuses on the jurisdiction of the USCIS, while section 1245.2(a)(1) sets forth the authority of IJs. *Interim Rule Notice*, 71 Fed. Reg. at 27,588 n.2; *see also*, *supra*, note 5.

[9] Under limited circumstances, an IJ does have jurisdiction to consider such an application. These circumstances involve aliens who previously filed adjustment applications, departed and returned to the United States under advance parole and subsequently were placed in removal proceedings. *See* 8 C.F.R. § 1245.2(a)(1)(ii).

> [w]hile . . . it will ordinarily be appropriate for an immigration judge to exercise his or her discretion favorably to grant a continuance or motion to reopen in the case of an alien who has submitted a prima facie approvable visa petition and adjustment application in the course of a deportation hearing, the BIA has recognized that this is not an inflexible rule and that an immigration judge has discretion in an appropriate case to deny a continuance even if the alien is the beneficiary of a visa petition or labor certification that, if approved, could render the alien eligible for adjustment of status.

*Id.* at 27,589 (citing *Matter of Garcia*, 16 I. & N. Dec. 653, 657 (BIA 1978)). The Secretary and Attorney General then explained that their respective agencies were soliciting comments "on the standards for the granting of continuances to arriving aliens in removal proceedings while applications for adjustment of status are pending with USCIS." *Id.*

In his brief before the Board, Mr. Ceta attached a notice showing that his I-130 had been approved as of January 9, 2002. Relying on the decisions of the courts of appeals that had struck down the former regulation,[10] Mr. Ceta contended that the amended regulation was inconsistent with INA § 245(a), 8 U.S.C. § 1255(a), because, as applied to his case, it achieved precisely the same result as the former regulation; that is, he was prevented from applying for adjustment of status. Mr. Ceta also argued that the IJ erred in failing to terminate the proceedings without prejudice or to grant him a continuance. The DHS,

---

[10] For an explanation of these decisions, see, *supra*, note 7.

without mentioning the amended regulation, opposed Mr. Ceta's appeal, arguing that the IJ had concluded correctly that Mr. Ceta, as an arriving alien, was ineligible to apply for adjustment of status, and, on that basis, the IJ also had correctly denied his motion for termination or a continuance.

In a brief, per curiam order, the BIA affirmed the IJ's decision in all respects. The Board explained that the amended regulation provided that IJs generally do not have jurisdiction to adjudicate an application for adjustment of status filed by an arriving alien in removal proceedings and that the limited exception to this general rule was inapplicable in Mr. Ceta's case. A.R. at 2 (citing 8 C.F.R. § 1245.2(a)(1)(ii)). The BIA, however, did not discuss the *Interim Rule Notice* issued with the amended regulation, in which the Secretary and Attorney General explained that "it will ordinarily be appropriate for an immigration judge to exercise his or her discretion favorably to grant a continuance . . . in the case of an alien who has submitted a prima facie approvable visa petition and adjustment application in the course of a deportation hearing." *See Interim Rule Notice*, 71 Fed. Reg. at 27,589-90. Nonetheless, the Board did note that, under the amended regulation, Mr. Ceta must pursue any application for adjustment of status with the USCIS independent of the removal proceedings. "Based on this determination," the Board concluded, "we find no error in the Immigration Judge's denial of [Mr. Ceta's] motion for a continuance or the Immigration Judge's denial of [Mr. Ceta's] request for termination of the proceedings." A.R. at 3. The Board dismissed Mr. Ceta's appeal.

Mr. Ceta timely petitions for review of the BIA's decision. On April 21, 2008, Mr. Ceta filed in this court an

emergency motion for a stay of removal, which the Government opposed. That same day, we issued a temporary stay of removal pending resolution of Mr. Ceta's motion. On May 16, this court issued an order directing that Mr. Ceta's emergency motion be taken up with the case for determination by the merits panel and further directing that the temporary stay would remain in effect until the court orders otherwise. On June 4, 2008, we continued the stay of Mr. Ceta's removal pending our final resolution of the case.

## II

## DISCUSSION

Mr. Ceta challenges the BIA's decision on two grounds, which really are two sides of the same coin. *First*, he claims that the amended regulation, as applied by the IJ and BIA here, is inconsistent with INA § 245(a), 8 U.S.C. § 1255(a). In support of this contention, Mr. Ceta adopts the reasoning articulated by the four courts of appeals that struck down the now-repealed regulation.[11] Essentially, Mr. Ceta contends that the amended regulation, as applied in his case, achieves precisely the same result that these courts found to conflict with the Act. *Second*, Mr. Ceta submits that the IJ—and, by affirming the IJ's decision, the BIA—erred in denying his motion for a continuance. The denial of his motion for a continuance, Mr. Ceta contends, effectively denies him the ability to apply for adjustment of status before the USCIS.

---

[11] *See Scheerer*, 445 F.3d at 1322; *Bona*, 425 F.3d at 670-71; *Zheng*, 422 F.3d at 119-20; *Succar*, 394 F.3d at 13. For a synopsis of these cases, see, *supra*, note 7.

The Government claims that we do not have jurisdiction over the case because Mr. Ceta has failed to exhaust his administrative remedies. Additionally, the Government contends that we do not have jurisdiction to consider the IJ's denial of Mr. Ceta's request for a continuance. As authority for this assertion, the Government invokes the door-closing statute, 8 U.S.C. § 1252(a)(2)(B),[12] and our recent decision in *Ali v. Gonzalez*, 502 F.3d 659, 663 (7th Cir. 2007). The Government also opposes Mr. Ceta's claim that the amended regulation conflicts with the INA; it notes that two circuits have approved of and applied that regulation. *See Scheerer v. U.S. Attorney Gen.*, 513 F.3d 1244, 1251 (11th Cir. 2008) [hereinafter *Scheerer II*]; *Brito v. Mukasey*, 521 F.3d 160, 168 (2d Cir. 2008) (acknowledging *Succar*, noting that the Attorney General and the Secretary had sought to resolve the circuit split by amending the regulation, and applying the amended regulation without questioning its validity).

---

[12] The door-closing statute, entitled "[d]enials of discretionary relief," provides, in relevant part:

> Notwithstanding any other provision of law . . . no court shall have jurisdiction to review—

> (i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B).

**A.**

**1.**

We begin with the Government's contention that we do not have jurisdiction to consider Mr. Ceta's argument that the IJ improperly denied his motion for a continuance. Under the door-closing statute, 8 U.S.C. § 1252(a)(2)(B), and our interpretation of that statute, *Ali*, 502 F.3d at 663, the Government contends, this court does not have jurisdiction to consider the IJ's refusal to continue Mr. Ceta's removal proceedings.

The door-closing statute, entitled "[d]enials of discretionary relief," provides, in relevant part: "Notwithstanding any other provision of law . . . no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title." 8 U.S.C. § 1252(a)(2)(B)(ii). In *Ali*, we interpreted this statute to strip this court of jurisdiction to consider an IJ's refusal to continue removal proceedings. *Ali*, 502 F.3d at 663-64. As the Government acknowledges, however, our precedent specifically recognizes that the door-closing statute does not operate as a bar to judicial review where the decision to deny a motion for a continuance has the "effect of nullifying the statutory opportunity to adjust status." *Id.* at 665 (citing *Subhan v. Ashcroft*, 383 F.3d 591 (7th Cir. 2004)). Indeed, since our decision in *Ali*, we consistently have preserved the *Subhan* exception and its applicability in determining whether we have jurisdiction to review the denial of a motion for a continuance. *See,*

*e.g.*, *Wood v. Mukasey*, 516 F.3d 564, 568 (7th Cir. 2008).[13]

In *Subhan*, we concluded that, despite the door-closing statute, we had jurisdiction to review the denial of a continuance when such a denial would nullify an alien's statutory opportunity to adjust status. Specifically, we found it untenable "that Congress, intending, as it clearly did, to entitle illegal aliens to seek an adjustment of status upon the receipt of [certain required] certificates . . . , at the same time also intended section 1252(a)(2)(B)(ii) to place beyond judicial review decisions that nullif[y] the statute." *Subhan*, 383 F.3d at 595. In *Benslimane v. Gonzales*, we explained that *Subhan* applies when the denial of a continuance request has "the effect of a substantive ruling on the application to adjust . . . status." 430 F.3d 828, 832 (7th Cir. 2005) ("An immigration judge cannot be permitted, by arbitrarily denying a motion for a continuance without which the alien cannot establish a ground on which Congress has determined that he is eligible to seek to remain in this country, 8 U.S.C. §§ 1151(b)(2)(A)(i), 1255(a), to thwart the congressional design."). Consequently, despite the general rule announced in *Ali*, we retain jurisdiction to review a denial of a continuance if that denial "operates to nullify some statutory right or leads inescapably to a substantive adverse decision on the merits of an immigration claim." *Boyanivskyy v. Gonzales*, 450 F.3d 286, 291-92 (7th Cir. 2006) (citing *Subhan*, 383 F.3d at 595, and *Benslimane*, 430 F.3d at 832); *see also Ali*, 502 F.3d at 664-65 (examining whether "the exception noted in *Subhan*"

---

[13] *See also, e.g.*, *Saeed v. Mukasey*, No. 07-3020, 2008 WL 2311596, at *1 (7th Cir. June 4, 2008) (unpublished); *Barragan-Mora v. Mukasey*, No. 07-1694, 2008 WL 2001644, at *2 (7th Cir. May 9, 2008) (unpublished); *Mejia v. Keisler*, 251 Fed. App'x 354, 357 (7th Cir. 2007) (unpublished).

applies). Because a court "has jurisdiction to determine whether there is jurisdiction," *Montrose Chem. Corp. v. EPA*, 132 F.3d 90, 94 (D.C. Cir. 1998); *see also Flores-Leon v. INS*, 272 F.3d 433, 437 (7th Cir. 2001), we proceed to the question of whether the *Subhan* exception to *Ali* applies here.

**2.**

Mr. Ceta's case fits squarely within the *Subhan* exception. The IJ's denial—more specifically, the BIA's affirmation of that denial—of Mr. Ceta's request for a continuance amounts, under the circumstances of this case, to a denial of his statutory right to apply for adjustment of status. Before the IJ, Mr. Ceta requested a continuance to allow him to obtain an I-130, a prerequisite for filing an application for adjustment of status. The IJ denied the continuance request because, under then-existing regulations, Mr. Ceta was categorically ineligible to apply for adjustment. A.R. at 44 (concluding that Mr. Ceta is "not eligible for adjustment of status before the Immigration Court"). Mr. Ceta appealed the IJ's decision to the BIA, and, while his appeal was pending, the regulations that categorically had prohibited him from applying for adjustment were repealed. Mr. Ceta notified the Board that his I-130 had been approved. He also requested that the Board remand the case with instructions to continue the proceedings, in order to enable him to pursue his adjustment application with the USCIS. Despite describing the amended regulation at some length and recognizing that the new regulatory regime allowed Mr. Ceta to "pursue an[] application for adjustment of status with [the USCIS] independent of these removal proceedings," the Board affirmed the IJ's denial of Mr. Ceta's motion for a continuance. A.R. at 3.

The BIA's ruling has "the effect of a substantive ruling on [Mr. Ceta's] application to adjust his status." *See Benslimane*, 430 F.3d at 832. Under the INA, in general, an administratively final order of removal, unless appealed, must be executed within a period of 90 days. *See* 8 U.S.C. § 1231(a)(1)(A). Moreover, once an alien has been removed, he no longer may obtain adjustment of status based on marriage. *See Subhan*, 383 F.3d at 595 ("[A]djustment of status . . . based on marriage to a U.S. citizen[] cannot be pursued once the alien has been removed from the United States."); *see also* 8 U.S.C. §§ 1182(a)(9)(A), 1255(a)(2). Because of the denial of the continuance, therefore, Mr. Ceta's statutory right to apply for adjustment of status is trapped within a regulatory interstice: Section 1255 and the amended regulation, 8 C.F.R. § 245.2(a)(1), afford him an opportunity to seek adjustment of status with the USCIS, but he will be deported by Immigration and Customs Enforcement before the USCIS is able to adjudicate that application. Indeed, under the new regulatory regime, unless these subagencies engage in some minimal coordination of their respective proceedings—for example, by the immigration courts favorably exercising discretion, in the appropriate case, to continue proceedings to allow the other subagency to act—the statutory opportunity to seek adjustment of status will prove to be a mere illusion.

At least one of our sister circuits has reached the same conclusion under identical circumstances. The Court of Appeals for the Ninth Circuit has explained that

> [t]he opportunity that the Interim Rule affords for an arriving alien in removal proceedings to establish his eligibility for adjustment based on a bona fide marriage *is rendered worthless* where the BIA, as it purports to do in the present case, denies a motion to reopen (or

continue) that is sought in order to provide time for
USCIS to adjudicate a pending application. Without a
reopening or a continuance, an alien is subject to a final
order of removal, despite the fact that he may have a
prima facie valid I-130 and adjustment application
pending before USCIS. If an alien is removed, he is no
longer eligible for adjustment of status.

*Kalilu v. Mukasey*, 516 F.3d 777, 780 (9th Cir. 2007) (empha-
sis supplied); *see also Sheng Gao Ni v. BIA*, 520 F.3d 125, 129-
30 (2d Cir. 2008) ("The BIA did not consider . . . whether
petitioners' newfound ability to file adjustment applica-
tions with the USCIS warranted a favorable exercise of its
discretion to reopen and continue the proceedings and
thereby lift the removal orders."). Indeed, the *Interim
Rule Notice* foresaw this problem and recognized that "it
will ordinarily be appropriate for an immigration judge
to exercise his or her discretion favorably to grant a
continuance . . . in the case of an alien who has submitted
a prima facie approvable visa petition and adjustment
application in the course of a deportation hearing." *See
Interim Rule Notice*, 71 Fed. Reg. at 27,589-90 (citing *Matter
of Garcia*, 16 I. & N. Dec. 653, 657 (BIA 1978)). The denial of
Mr. Ceta's motion for a continuance "operate[d] to nullify
[his] statutory right" to apply for adjustment of status.
*Boyanivskyy*, 450 F.3d at 292 (citing *Subhan*, 383 F.3d at 595).
Accordingly, we have jurisdiction to consider Mr. Ceta's
submission regarding the denial of his request for a
continuance.

**B.**

In this case, the BIA improperly declined to remand Mr.
Ceta's case to the IJ with instructions to continue the

proceedings so that Mr. Ceta could pursue his adjustment application with the USCIS. As we explained in *Subhan*, when denying a motion for a continuance would nullify the petitioner's statutory opportunity to apply for adjustment of status, the immigration courts must provide "a reason consistent with the [adjustment] statute." *Subhan*, 383 F.3d at 595; *Benslimane*, 430 F.3d at 833 (granting a petition for review where the reason given for the denial was "completely arbitrary"). For example, we have explained that "foot-dragging, criminal activity, or [an IJ's determination as to the ultimate] lack of merit" of an adjustment application constitute valid reasons for denying a continuance request. *Ahmed v. Gonzales*, 465 F.3d 806, 809 (7th Cir. 2006); *Pede v. Gonzales*, 442 F.3d 570, 571 (7th Cir. 2006) (noting that "the ultimate hopelessness of [petitioner]'s adjustment application" was a "perfectly acceptable basis for the IJ's exercise of discretion").

In the present case, the BIA did not articulate a reason for denying Mr. Ceta's motion for a continuance that was consistent with the adjustment statute. Instead, it simply stated that, because Mr. Ceta had to apply for adjustment with the USCIS, it "f[ou]nd no error in the Immigration Judge's denial of [Mr. Ceta's] motion for a continuance or the Immigration Judge's denial of [Mr. Ceta's] request for termination of the proceedings." A.R. at 2-3. Just as in *Subhan*, "[t]his is not a *reason* for denying" the motion for a continuance, "but merely a statement of the obvious." *Subhan*, 383 F.3d at 593 (emphasis in original). Under the new regulatory regime, it is true that Mr. Ceta had to apply for adjustment with the USCIS; however, as a practical matter, he needed more time to pursue his application with that agency. The BIA failed to address this critical point. The immigration court's lack of juris-

diction to entertain adjustment applications was not a rational basis for denying Mr. Ceta's continuance request but merely a reiteration of the amended regulation. *See Sheng Gao Ni*, 520 F.3d at 129-30 ("[T]he reason set forth by the BIA for its denial of the motions—a lack of jurisdiction over adjustment applications—was unresponsive to the relief petitioners sought and therefore did not provide a rational explanation for the denial."); *Kalilu*, 516 F.3d at 780 (concluding under identical circumstances that "the BIA's denial of Petitioner's motion to reopen solely on jurisdictional grounds constitutes an abuse of discretion"); *cf. Dada v. Mukasey*, No. 06-1181, ___ S. Ct. ___, 2008 WL 2404066, at *13 (June 16, 2008) (noting, in the motion to reopen context, that although "the BIA has discretion to deny the motion for a stay, it may constitute an abuse of discretion for the BIA to do so where the motion states nonfrivolous grounds for reopening").[14]

---

[14] *But see Scheerer v. U.S. Attorney Gen.*, 513 F.3d 1244, 1254-55 (11th Cir. 2008) [hereinafter *Scheerer II*]. In *Scheerer II*, the Eleventh Circuit determined on jurisdictional grounds that the BIA did not abuse its discretion in denying a motion to reopen or a motion for a continuance. 513 F.3d at 1254. The petitioner in that case contended that previous Eleventh Circuit cases had found "an abuse of discretion in the denial of a continuance during the pendency of a visa petition where the alien was seeking adjustment of status." *Id.* The court distinguished these cases, however, explaining that the petitioners there were subject to different regulations under which they were entitled to initiate adjustment applications with the immigration courts rather than with the USCIS. In contrast,

> under 8 C.F.R. § 1245.2(a)(1)(ii), the immigration courts have no jurisdiction over adjustment applications filed by aliens

(continued...)

Consequently, we conclude that the BIA abused its discretion in affirming the IJ's denial of Mr. Ceta's motion for a continuance.[15]

---

[14] (...continued)

> in [the petitioner's] position. Therefore, his application would never return to the immigration courts even if denied by USCIS. Given these circumstances—in which there is no possibility that [the petitioner's] adjustment application would be adjudicated during removal proceedings—the BIA did not abuse its discretion in denying [the petitioner's] motion.

*Id*.

In our view, the fact that Mr. Ceta's application, in accordance with the amended regulation, will not be adjudicated by the immigration courts is not a sound or responsive reason for denying his continuance request. *See Sheng Gao Ni*, 520 F.3d at 129-30; *Kalilu*, 516 F.3d at 780; *see also Benslimane*, 430 F.3d at 832; *Subhan*, 383 F.3d at 595; *Interim Rule Notice*, 71 Fed. Reg. at 27,589-90 (noting that "it will ordinarily be appropriate for an immigration judge to exercise his or her discretion favorably to grant a continuance . . . in the case of an alien who has submitted a prima facie approvable visa petition and adjustment application in the course of a deportation hearing"). Indeed, granting a continuance in appropriate cases, as contemplated in the *Interim Rule Notice*, will ensure that the immigration courts do not intrude into the USCIS' new role, under the amended regulations, as the sole adjudicator of adjustment applications. Furthermore, any difficulty in coordinating the proceedings—for example, after the USCIS adjudicates the adjustment application—may be resolved by counsel notifying the IJ of the ultimate outcome of the adjustment application.

[15] Mr. Ceta also contends that the BIA has applied the new regulation in a manner inconsistent with its purpose and intent.

(continued...)

To summarize, the denial of Mr. Ceta's request for a continuance, under the circumstances of this case, amounted to a denial of his statutory opportunity to apply for adjustment of status. *See Subhan*, 383 F.3d at 595. Therefore, despite the door-closing statute and the general rule announced in *Ali*, we have jurisdiction under the

---

[15] (...continued)

The Interim Rule was issued in order to bring the immigration system in line with the circuit courts that had struck down the previous regulation. *Interim Rule Notice*, 71 Fed. Reg. at 27,587 (recognizing these rulings and explaining that "the Secretary and the Attorney General have undertaken to resolve the conflict through rulemaking by removing 8 CFR 245.1(c)(8) and 1245.1(c)(8) rather than continue to litigate their validity"). These courts struck down the previous regulation on the ground that it violated INA § 245(a), 8 U.S.C. § 1255(a), because it categorically denied eligibility for adjustment to persons that Congress determined, under section 1255(a), to be eligible to apply for such relief. Accordingly, Mr. Ceta contends that, in his case, the BIA applied the amended regulation in a manner inconsistent with the purpose and intent of the new regulation. *Cf. Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) ("[W]e must defer to the Secretary's interpretation unless an alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation." (internal quotation marks and citation omitted)). Because we conclude that the BIA provided an improper reason for denying his request for a continuance, we need not address this alternative submission.

Additionally, given our holding that the BIA erred in affirming the IJ's denial of his request for a continuance, we do not consider Mr. Ceta's argument that the amended regulation, as applied in his case, achieves the same result that four courts of appeals found to conflict with the Act.

*Subhan* exception to review his submissions regarding the propriety of that denial. *See id.*; *see also Ali*, 502 F.3d at 664-65. Moreover, neither the IJ nor the BIA provided a reason consistent with the adjustment of status statute for denying Mr. Ceta's motion for a continuance. Accordingly, we grant Mr. Ceta's petition for review, and the case is remanded to the immigration courts for proceedings consistent with this opinion.[16]

---

[16] At oral argument in this case, the Government raised a new argument not set forth in its brief: It contended that Mr. Ceta's predicament arose not from the BIA's refusal to remand with instructions to continue the proceedings, but from Mr. Ceta's failure to file an application with the USCIS until several months ago. Under well-established principles of appellate procedure, we shall not consider arguments raised for the first time at oral argument; the Government therefore has forfeited this submission. *Valentine v. City of Chicago*, 452 F.3d 670, 680 n.1 (7th Cir. 2006); *Awe v. Ashcroft*, 324 F.3d 509, 512-13 (7th Cir. 2003).

Nor, given the unusual facts of this case as well as the important regulatory changes that have suffused it, would we be inclined to accept the Government's argument had it properly been asserted. The IJ and BIA, of course, never relied on lack of diligence or delay as a reason for denying Mr. Ceta's motion for a continuance. Furthermore, it was not unreasonable for Mr. Ceta to conclude that, in light of the regulatory changes, the BIA would remand his case to the IJ with instructions to continue the proceedings, as we have held that it should have done, and that he could file the adjustment application with the USCIS after obtaining that continuance. After the BIA affirmed the IJ's decision (subsequent to the regulatory changes), however, Mr. Ceta became subject to an administratively final order of removal. Given that final removal order with the concomitant

(continued...)

## Conclusion

For the foregoing reasons, Mr. Ceta's petition for review is granted, the judgment of the BIA is reversed, and the case is remanded for proceedings consistent with this opinion.

PETITION FOR REVIEW GRANTED;
REVERSED and REMANDED

---

[16] (...continued)
requirement that he be removed within 90 days, the timing of his application with the USCIS did not contribute to Mr. Ceta's predicament; even if Mr. Ceta had filed his application immediately after the regulation was amended, he would have been removed well before the USCIS would have adjudicated his application to adjust status. *See* United States Citizenship and Immigration Services, Backlog Elimination Plan, Fiscal Year 2006, 2nd Quarter Update, 3-4 (Sept. 28, 2006), *available at* http://www.uscis.gov/files/article/BEPQ2FY06.pdf (last visited July 1, 2008) (reporting to Congress that the target completion time for applications for adjustment of status is six months, but, by the end of the second quarter of fiscal year 2006, adjustment applications had an average completion time of approximately twelve months). Mr. Ceta consistently has asserted his intent to apply for adjustment of status, and he has been prevented from doing so despite his purposeful pursuit of that relief. On remand, of course, the Government is free to contend that, for other reasons consistent with the adjustment of status statute, the grant of a continuance would be inappropriate.

Finally, because Mr. Ceta filed with the USCIS an adjustment of status application prior to oral argument, we need not consider the Government's argument that Mr. Ceta has failed to exhaust his administrative remedies.

---