# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 08-2834

MUGHAL MUHAMMAD ISHITIAQ,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,[1]

*Respondent.*

Petition for Review of an Order of
the Board of Immigration Appeals.
No. A95-925-134

ARGUED MARCH 30, 2009—DECIDED AUGUST 25, 2009

Before KANNE, WOOD, and WILLIAMS, *Circuit Judges*.

WILLIAMS, *Circuit Judge*. Mughal Muhammad Ishitiaq
seeks review of a final order of the Board of Immigration
Appeals, which found Ishitiaq statutorily ineligible for

---

[1] We substitute Eric H. Holder, Jr., the current Attorney General
of the United States, as the Respondent in this action. *See* Fed. R.
App. P. 43(c)(2).

asylum, denied his applications for withholding of removal and relief under the Convention Against Torture, and ordered him removed from the United States. We dismiss Ishitiaq's asylum petition because we lack jurisdiction to review it, and we deny the petition for review as to his withholding of removal and CAT claims because the decision was supported by substantial evidence.

## I. BACKGROUND

Mughal Muhammad Ishitiaq, a Sunni Muslim, was born in Pakistan in 1968. His father was a member of the religious group known as Jamat-E-Islami. Ishitiaq was never a member, although he did help his father with some of the group's charitable activities. After Ishitiaq's father became a member of Jamat-E-Islami, it turned from a benevolent organization to a terrorist group. When Ishitiaq was in high school, he was approached by two men who told him that he must join the group and train as a fighter in a Jihad camp. Ishitiaq did not join, and, as a result, in December 1986, Jamat-E-Islami members shot at, but did not injure, him. Three months later, in February 1987, Ishitiaq was kidnapped and beaten by some of the same men from Jamat-E-Islami. He was taken to a defense area and held for several days, but escaped. Ishitiaq then boarded a ship to Istanbul and traveled abroad as a seaman for the next ten years, occasionally returning home to Pakistan to visit friends and family.

Ishitiaq repatriated to Pakistan in January 2000. He learned that Jamat-E-Islami members and informants

were living in the area where he stayed. He, his wife and children hid at the home of a friend. In April 2000, a group of armed men came to the friend's home, blindfolded Ishitiaq, and drove him to a house where they allegedly beat him. Ishitiaq again escaped and made his way to the American Embassy. He applied for a visitor's visa and came to the United States on September 20, 2000.

After Ishitiaq overstayed his visa in the United States, removal proceedings began in March 2003. On December 2, 2003, Ishitiaq filed an application for asylum, withholding of removal and relief under the Convention Against Torture ("CAT"). On October 1, 2007, after the Immigration Judge ("IJ") presiding over his case had granted Ishitiaq several continuances, the IJ denied Ishitiaq's petition for asylum, withholding of removal, and protection under the CAT in an oral decision. The IJ found that Ishitiaq had not filed his application for asylum by the one-year deadline, and no changed or exceptional circumstances justified reconsidering his application. The IJ also determined that Ishitiaq was not eligible for withholding of removal because he had failed to show either the existence of past or the likelihood of future persecution on account of his religion or political opinion. Additionally, the IJ determined that the 2000 event was more "questionable" and concluded that because Ishitiaq did not give a detailed description of that encounter his testimony was not credible. Finally, because Ishitiaq failed to meet the standard for withholding of removal, the IJ denied him relief under the

more stringent standard for CAT protection. The IJ did, however, allow voluntary departure.

Ishitiaq appealed the IJ's ruling to the Board of Immigration Appeals ("BIA"). On June 27, 2008, the BIA affirmed the IJ's ruling in an order, relying on the IJ's determinations of fact and law. Ishitiaq petitions for review of the BIA's decision.

## II. ANALYSIS

We review the IJ's decision as supplemented by the BIA's analysis. *See Krishnapillai v. Holder*, 563 F.3d 606, 615 (7th Cir. 2009). We give deference to the IJ's factual determinations, and we uphold the decision if it is supported by substantial evidence. *See Ingmantoro v. Mukasey*, 550 F.3d 646, 649 (7th Cir. 2008). We will overturn the BIA's decision only if "the record compels a contrary result." *Mabasa v. Gonzales*, 455 F.3d 740, 744 (7th Cir. 2006) (quoting *Brucaj v. Ashcroft*, 381 F.3d 602, 606 (7th Cir. 2004)).

### A. Ishitiaq's asylum application

The Immigration and Nationality Act ("INA") defines a "refugee" as a person who is unable or unwilling to return to his native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *See* 8 U.S.C. § 1101(a)(42)(A). An asylum applicant must show a nexus between his

fear of future persecution and one of those five pro-tected grounds. *See Torres v. Mukasey*, 551 F.3d 616, 629 (7th Cir. 2008).

An alien who is physically present in the United States and seeks asylum must show by clear and convincing evidence that the asylum application has been filed within one year after the date the immigrant arrived in the United States. 8 U.S.C. § 1158(a)(2)(B); *Ogayonne v. Mukasey*, 530 F.3d 514, 519 (7th Cir. 2008). An application filed after the deadline may be considered if the alien "demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application." 8 U.S.C. § 1158(a)(2)(D); *See Ogayonne*, 530 F.3d at 519. Courts do not have juris-diction to review either the determination that an alien's asylum application was untimely or the deter-mination that the belated filing was not justified by changed or extraordinary circumstances. 8 U.S.C. § 1158(a)(3); *see also Ghaffar v. Mukasey*, 551 F.3d 651, 654 (7th Cir. 2008); *Kaharudin v. Gonzales*, 500 F.3d 619, 623 (7th Cir. 2007). We may review "constitutional claims or questions of law" under 8 U.S.C. § 1252(a)(2)(D), but "discretionary or factual determinations continue to fall outside the jurisdiction of the court of appeals enter-taining a petition for review." *Ogayonne*, 530 F.3d at 519 (quoting *Vasile v. Gonzales*, 417 F.3d 766, 768 (7th Cir. 2005)). The BIA's factual determination that an alien failed to file his asylum application within one year and the board's decision that he does not qualify for a time extension are unreviewable. *Id.*

The IJ found, and Ishitiaq does not dispute, that Ishitiaq entered the United States on September 20, 2000, with a visitor's visa with the permission to remain until March 19, 2001, but did not file his application for asylum until December 2, 2003, well beyond the one-year deadline. The BIA affirmed this finding, and we may not review this determination.

Ishitiaq argues, however, that the IJ and BIA committed a reviewable error of law by applying the "changed circumstances" provisions of § 1158(a)(2)(D) to earlier events affecting Ishitiaq's ability to file on time rather than future events occurring after the one-year filing time frame. The "changed circumstances" to which Ishitiaq refers are the declaration of martial law in Pakistan on November 3, 2007, and the assassination of former Prime Minister Benazir Bhutto on December 27, 2007. The IJ did not believe these events demonstrated a change in country conditions material to Ishitiaq's asylum application. The BIA reaffirmed this finding and stated: "Moreover, these events do not serve to explain or excuse his delay in waiting to file his application until December 2003, inasmuch as these two events occurred some 4 years *after* he filed his asylum application." Ishitiaq argues that the BIA misunderstood the regulation by requiring the changed circumstances to explain his late filing, rather than "materially affect[ing] the applicant's eligibility for asylum" as § 1158(a)(2)(D) states.

We find no error of law. The BIA properly recognized that Ishitiaq failed to explain how the declaration of martial law and Bhutto's assassination affected his

eligibility for asylum. Because a question of fact or an application of law to fact regarding the extraordinary or changed circumstances exceptions does not raise a legal claim, we cannot review it. *See Viracacha v. Mukasey*, 518 F.3d 511, 514 (7th Cir. 2008) (finding that changed country conditions occurring after the deadline for timely filing were not material, and the IJ did not make a legal mistake in arriving at that conclusion). As to the BIA's additional reason that these two events did not affect Ishitiaq's application because they occurred four years after he filed for asylum, we believe the BIA was addressing the "extraordinary circumstances" exception. *See* 8 U.S.C. § 1158(a)(2)(D) (an asylum application filed after the one-year deadline may be considered if the applicant shows "extraordinary circumstances relating to the delay in filing an application"). The BIA was explaining that the declaration of martial law did not excuse Ishitiaq's late filing, the only other possible basis for finding Ishitiaq statutorily eligible for asylum. *See* 8 C.F.R. § 1208.4(a)(5). The BIA did not misapprehend the regulations, and Ishitiaq cannot overcome the jurisdictional bar against reviewing discretionary decisions by cloaking rationale he does not agree with as a legal error. *See Ghaffar*, 551 F.3d at 655. Because Ishitiaq did not raise a constitutional claim or question of law, we dismiss the petition for review of his asylum application for lack of jurisdiction.

## B.  Ishitiaq's withholding of removal and CAT claims

Although we lack jurisdiction over the asylum application, we may review the denial of Ishitiaq's with-

holding of removal and CAT claims. An alien is entitled to withholding of removal if he can show a "clear probability" that his "life or freedom would be threatened . . . because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); *Khan v. Filip*, 554 F.3d 681, 690 (7th Cir. 2009). This standard is more stringent than the asylum inquiry. *See Selimi v. Ashcroft*, 360 F.3d 736, 741 (7th Cir. 2004). An alien can meet this standard by showing that he was subject to past persecution, which triggers a rebuttable presumption of future persecution. 8 C.F.R. § 1208.16(b)(1); *Khan*, 554 F.3d at 690; *Irasoc v. Mukasey*, 522 F.3d 727, 729-30 (7th Cir. 2008). Or, in the absence of evidence of past persecution, an alien can show that it is more likely than not that he will suffer persecution if removed. 8 C.F.R. § 1208.16(b)(2); *Khan*, 554 F.3d at 690; *BinRashed v. Gonzales*, 502 F.3d 666, 671 (7th Cir. 2007). "Persecution entails punishment or the infliction of harm for political, religious, or other reasons that this country does not recognize as legitimate." *Khan*, 554 F.3d at 690 (quoting *De Souza v. INS*, 999 F.2d 1156, 1158 (7th Cir. 1993) (internal quotation marks omitted)). An applicant "need not show that her life or freedom were threatened, but the harm she suffered must rise above the level of mere harassment and must result from more than unpleasant or even dangerous conditions in her home country." *Nakibuka v. Gonzales*, 421 F.3d 473, 476 (7th Cir. 2005).

Here, the IJ determined that Ishitiaq had not been subjected to past persecution on account of his politics or religion and did not establish a likelihood of future persecution. Regarding past persecution, the IJ stated:

> I would say that what little [Ishitiaq] has given in terms of the details of that encounter in April of 2000, does not establish that he was tortured, perhaps, beaten as he said but certainly not tortured as that terms [*sic*] has been defined in the dictionary or even in case law. I don' [*sic*] find that he has been subjected to past persecution which would give rise to a realistic likelihood of mistreatment in Pakistan.

Ishitiaq argues on appeal that the IJ committed legal error by determining that Ishitiaq had not suffered past "persecution" because he had not been "tortured." By equating those two terms, Ishitiaq argues, the IJ placed an impermissibly high burden on him to prove past persecution. Because Ishitiaq contends the factual evidence compels the conclusion that he did indeed suffer past persecution, he also asserts that the burden should shift to the government to rebut the presumption that he will be persecuted if returned to Pakistan.

Ishitiaq's arguments fail for several reasons. As an initial matter, Ishitiaq's claim was procedurally defaulted when he failed to raise the issue before the BIA. 8 U.S.C. § 1252(d)(1) ("A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right"); *Ghaffar*, 551 F.3d at 655 ("The duty to exhaust includes the obligation to first present to the BIA any argument against the removal order as to which the Board is empowered to grant the alien meaningful relief."). The failure to exhaust may be overlooked only when the alien raises constitutional claims because "the final say on constitu-

tional matters rests with the courts." *Ghaffar*, 551 F.3d at 655 (quoting *Singh v. Reno*, 182 F.3d 504, 510 (7th Cir. 1999)). In his appeal to the BIA, Ishitiaq's argument regarding his past persecution focused solely on distinguishing his situation from that of the two cases on which the IJ relied.[2] Although it is clear that Ishitiaq did not waive his past persecution argument, he certainly did not challenge the IJ's alleged misapprehension that past persecution must equate to torture.

Even so, Ishitiaq's claim is without substantive merit. Although the IJ did state that, in his determination, Ishitiaq had not been "tortured," we do not read the IJ as requiring torture to establish past persecution. Rather, the IJ gave several valid reasons to bolster his conclusion that Ishitiaq did not suffer persecution. First, Ishitiaq did not show that the incidents of which he complained were on account of his politics or religion. Ishitiaq does not claim to be a political activist. Indeed, he contends that Jamat-E-Islami members targeted him in order to *recruit* him, and he does not argue that he refused to join because of his political opinion. *See INS v. Elias-Zacarias*, 502 U.S. 478, 481-82 (1992) (guerrilla group's attempt to recruit applicant did not necessarily constitute "persecu-

---

[2] The IJ compared Ishitiaq's case to *Ahmed v. Ashcroft*, 94 F. App'x 361 (7th Cir. 2004) (unpublished opinion) (determining substantial evidence proved past persecution because of his and his family's affiliation with high-ranking members of the People's Pakistan Party), and *Meghani v. INS*, 236 F.3d 843 (7th Cir. 2001) (evidence that applicant had been beaten by members of opposition party was insufficient to establish that he suffered political persecution).

tion on account of political opinion"). Ishitiaq presented no evidence that he declined to join Jamat-E-Islami because of his political views or that the group targeted him because of his political opinion. On the contrary, he testified that the group wanted him because of his youth and size and that he refused to join because he did not want to train as a fighter in a Jihad camp. Nor is there any evidence that he faced persecution because he was a Sunni Muslim. The IJ also noted that Sunni Muslims, like Ishitiaq, comprise 77% of the Pakistani population.

As to the likelihood of future persecution, which Ishitiaq failed to fully brief on appeal, the IJ explained that the kidnapping and beatings in 1987 occurred fourteen years before his arrival in the United States. We agree that this timing weakens Ishitiaq's claim of future persecution and also note that Ishitiaq returned to Pakistan several times after those incidents. Moreover, the IJ aptly pointed out that Ishitiaq's father, who is a member of Jamat-E-Islami, remains in Pakistan unharmed (as do Ishitiaq's wife, children, brothers and sisters). *See Toptchev v. INS*, 295 F.3d 714, 722 (7th Cir. 2002).

Because the record was sufficient to establish that Ishitiaq had not suffered past persecution or the likelihood of future persecution, we will not set aside the denial of Ishitiaq's petition for withholding of removal and protection under CAT.[3]

---

[3] For the same reasons Ishitiaq failed to establish past persecution or the likelihood of future persecution to make him eligible for withholding of removal, we uphold the IJ's deter-

(continued...)

### III. CONCLUSION

Therefore, we DISMISS Ishitiaq's petition for review of his asylum claim and DENY the petition for review of his withholding of removal and CAT claims.

---

(...continued)

mination in regard to his CAT claim. *See* 8 C.F.R. § 1208.16(c)(2) (an applicant is eligible under CAT if "it is more likely than not that he or she would be tortured if removed"). Moreover, Ishitiaq failed to allege the Pakistani government would torture him or acquiesce to his torture as needed for protection under CAT. *See* 8 C.F.R. § 1208.18(a)(1) (infliction of pain or suffering meets definition of torture when "inflicted by or at the instigation of or with the consent or acquiescence of a public official").

---

8-25-09