In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-3790

GRAZYNA EWA PAWLOWSKA, et al.,

*Petitioners,*

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent.*

Petition for Review of an Order of
the Board of Immigration Appeals.
Nos. A077-773-720, A077-776-306 & A077-776-307

ARGUED SEPTEMBER 9, 2010—DECIDED OCTOBER 22, 2010

Before WOOD, EVANS, and TINDER, *Circuit Judges*.

EVANS, *Circuit Judge*. "Operation Durango" was a sting operation conducted jointly by the former Immigration and Naturalization Service (INS), the FBI, and the Social Security Administration from 1998 to 2001. Briefly put, some individuals seeking permanent resident status in the United States were brought to a storefront that appeared to be a travel agency by a "bro-

ker," who then introduced them to an undercover agent posing as a corrupt immigration officer. In exchange for a fee considerably higher than normal (here, $5,000 compared to around $200 for a regular application), the undercover agent would place stamps in the individuals' passports indicating legal permanent resident status. Usually, the brokers caught up in the operation were prosecuted criminally, while the individuals who sought permanent resident status were referred for removal proceedings. *See generally Mozdzen v. Holder*, ___ F.3d ___ , 2010 WL 3463705, at *1 (7th Cir. Sept. 7, 2010) (describing Operation Durango). The petitioner, Grazyna Ewa Pawlowska, a native and citizen of Poland, was one of the latter individuals.[1]

Upon being charged with removability, Pawlowska requested a continuance to pursue adjustment of status based on an approved visa petition filed by her brother, a U.S. citizen, about ten years previously. In the alternative, she requested voluntary departure. After an evidentiary hearing, the immigration judge (IJ) refused to grant a continuance, finding that it would be futile because he would ultimately deny the request for adjustment of status based on Pawlowska's attempt to illegally obtain an immigration benefit in conjunction with Operation Durango. The IJ also denied Pawlowska's request for voluntary departure, again based on her participation in

---

[1] Pawlowska's sons, Bartlomiej and Szymon Pawlowski, are also petitioners here but make no separate arguments. Thus, we will continue to refer to Pawlowska individually.

the operation. The Board of Immigration Appeals (BIA) affirmed, and Pawlowska filed a petition for review.[2]

Back in 1997, Pawlowska was admitted to the U.S. as nonimmigrant visitor. Shortly thereafter, her two sons were also admitted. All three failed to depart when their visas expired. In 1999, Pawlowska came to the attention of the INS through her participation in Operation Durango. At the evidentiary hearing before the IJ, Pawlowska testified that she was duped by the operation. In other words, she thought that she had obtained permanent resident status legally from an actual immigration officer. The requested fee of $5,000[3] did not strike her as unusual, as the officer said it would make the process go faster. Pawlowska knew, however, that she faced a ten-year wait for adjustment of status through her brother's petition. This amount of time, she said, was "too long for me."

Randy Beckwith, a special agent with the Department of Homeland Security (DHS), also testified at the hearing. In addition to providing background on Operation Durango, Beckwith described two memoranda

---

[2] Although the IJ and BIA granted voluntary departure to Pawlowska's sons, who were not involved in Operation Durango, those grants automatically terminated when they joined their mother's petition for review. *See* 8 C.F.R. § 1240.26(i).

[3] Interestingly, the Polish immigrants in *Mozdzen* paid $12,000, but that was to cover a total of three permanent residency seekers.

prepared by the previous case agent, which generally stated that Pawlowska paid $5,000 for passport stamps and was told that, if she were ever questioned, she should falsely say that she obtained permanent resident status legally through her U.S. citizen brother. Clarence Robinson, another DHS agent, testified that he posed as a corrupt immigration officer in connection with Operation Durango. Robinson stated that, in that capacity, he did not identify himself as an immigration officer or wear a uniform and that there was nothing about the storefront indicating that it was an official government office. According to Robinson, Pawlowska paid him $5,000 for a passport stamp, and he provided her with a "cover story" consistent with the one described in the case memoranda.

The IJ determined that Pawlowska's testimony was incredible and that she "deliberately and intentionally sought to obtain an Immigration benefit by paying a bribe to an Immigration officer." Although she was not statutorily barred from voluntary departure, the IJ held that Pawlowska did not merit that relief as a discretionary matter because her participation in Operation Durango outweighed any positive equities, such as "the duration of her presence in the United States or gainful employment, [or] the lack of any other criminal record." The IJ also refused to grant a continuance, explaining that he would "deny an application for adjustment of status, even if visa numbers were current, in the exercise of discretion because . . . Pawlowaska[ ] has paid a bribe to an Immigration official in order to obtain permanent residence." He distinguished our

holding in *Subhan v. Ashcroft*, 383 F.3d 591 (7th Cir. 2004), because there, the only reason for the continuance denial was that certain administrative requests had not been processed.

The BIA affirmed, holding that there was no error in the IJ's decision to deny voluntary departure as a matter of discretion because Pawlowska lacked credibility in asserting that she had been duped into participating in Operation Durango. The BIA also held that there was no error in the IJ's decision to deny a continuance because an adjustment of status application would not merit a favorable exercise of discretion. The BIA agreed with the IJ that Pawlowska's case was distinguishable from *Subhan* because she was not simply waiting for administrative paperwork to be approved.

Where, as here, the BIA agrees with the IJ's decision but supplements his reasoning, we review the IJ's decision as supplemented by the BIA. *Juarez v. Holder*, 599 F.3d 560, 564 (7th Cir. 2010). Before we reach the merits, however, we must first determine whether we have jurisdiction to consider Pawlowska's claims. The government contends that we do not because she is challenging discretionary determinations, which are unreviewable. Pawlowska, on the other hand, argues that our precedent allows for an exception regarding continuances and that the decision regarding voluntary departure involves a reviewable question of law.

We begin with the IJ's denial of Pawlowska's request for a continuance to pursue adjustment of status. To repeat, the IJ refused to grant a continuance because

he found that, even if a visa were immediately available to Pawlowska, he would deny her request for adjustment of status as a discretionary matter because she intentionally sought to bribe an immigration officer in conjunction with Operation Durango. As Pawlowska admits, we generally have no jurisdiction to review denials of discretionary relief from removal, pursuant to 8 U.S.C. § 1252(a)(2)(B). Subpart (i) of that section specifically prohibits review of "any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b [cancellation of removal], 1229c [voluntary departure], or 1255 [adjustment of status] of this title."[4]

Furthermore, we held in *Leguizamo-Medina v. Gonzales*, 493 F.3d 772, 775 (7th Cir. 2007), that § 1252(a)(2)(B)(i) bars judicial review of a denial of a continuance, where the continuance was ancillary to a contemplated application for cancellation of removal. Because § 1252(a)(2)(B)(i) "puts the [cancellation of removal] decision beyond review, . . . any opinion one way or the other on the propriety of the steps that led to that decision would be an advisory opinion." *Id.* As we previously noted, in addition to cancellation of removal, § 1252(a)(2)(B)(i) also expressly precludes judicial review of a decision regarding adjustment of status. *Leguizamo-Medina* therefore dictates that a continuance decision ancillary to an

---

[4] The Supreme Court's recent decision in *Kucana v. Holder*, ___ U.S. ___, 130 S. Ct. 827 (2010), is inapplicable because the government opposes jurisdiction under § 1252(a)(2)(B)(i), not § 1252(a)(2)(B)(ii). *See Jurarez*, 599 F.3d at 564 n.4.

adjustment of status application, such as the one at issue here, is also out of reach.

Nevertheless, Pawlowska argues that we have jurisdiction under the exception in *Subhan*. There, the petitioner was seeking to adjust his status and requested a continuance to allow him to obtain necessary labor certifications, but the IJ denied the continuance without explanation. We held that the decision could be reviewed because the IJ failed to "giv[e] a reason consistent with the [adjustment of status] statute," which effectively precluded the petitioner from pursuing adjustment of status. *Subhan*, 383 F.3d at 595. Here, in contrast, the IJ clearly gave a reason consistent with the statute for denying the continuance—namely, that he would ultimately deny adjustment of status as a discretionary matter because of Pawlowska's misconduct in conjunction with Operation Durango. *See Ceta v. Mukasey*, 535 F.3d 639, 647 (7th Cir. 2008) ("[W]e have explained that 'foot-dragging, criminal activity, or [an IJ's determination as to the ultimate] lack of merit' of an adjustment application constitute valid reasons for denying a continuance request."). Thus, we lack jurisdiction to review the continuance decision.

We now turn to the IJ's denial of Pawlowska's request for voluntary departure, which, to repeat, he refused to grant because her participation in Operation Durango outweighed any positive factors. Again, § 1252(a)(2)(B)(i) appears to block our review of this issue. Jurisdiction "over an appeal from denial of a request for an order of voluntary departure" is also precluded by § 1229c(f).

Pawlowska attempts to get around these bars by characterizing the issue as a question of law—namely, whether the IJ ignored binding precedent in failing to fully explore factors favoring relief. *See* 8 U.S.C. § 1252(a)(2)(D) (restoring jurisdiction to review "constitutional claims or questions of law").

The government argues that we need not address the jurisdictional bars because Pawlowska's voluntary departure argument has been procedurally defaulted. *See id.* at § 1252(d)(1) (providing that a court may review a final order of removal only if "the alien has exhausted all administrative remedies available to the alien as of right"); *Ishitiaq v. Holder*, 578 F.3d 712, 717 (7th Cir. 2009) (finding procedural default where the petitioner did not raise his claim before the BIA). Indeed, at oral argument, Pawlowska's counsel all but conceded that his client did not argue before the BIA that the IJ failed to explore favorable factors. But, although the government characterizes it as a "threshold" matter, the exhaustion requirement is not jurisdictional. *Korsunskiy v. Gonzales*, 461 F.3d 847, 849 (7th Cir. 2006). So we proceed with our analysis of that issue first.

Unfortunately for Pawlowska, this is the end of the line, because she has not raised a reviewable legal issue sufficient to overcome the jurisdictional bars that we previously discussed. In his decision, the IJ mentioned Pawlowska's positive equities, such as her long presence in the U.S., gainful employment, and lack of a criminal record, but decided to deny voluntary departure anyway because of her participation in Operation Durango.

Pawlowska's claim that the IJ improperly balanced the equities therefore is really a request to review the merits of a discretionary judgment. And, as such, it is unreviewable. *See Khan v. Mukasey*, 517 F.3d 513, 517 (7th Cir. 2008) (finding no jurisdiction where the petitioner contended that the IJ improperly balanced the equities in deciding whether to grant a waiver); *see also Ishitiaq*, 578 F.3d at 716 ("[The petitioner] cannot overcome the jurisdictional bar against reviewing discretionary decisions by cloaking rationale he does not agree with as a legal error."). Thus, we lack jurisdiction to review the voluntary departure decision.

For these reasons, we must dismiss Pawlowska's petition for review. Having said that, however, we wish to note that her situation is not without sympathy. She was caught up in a shady sting operation that in some countries (even Poland, perhaps) might represent the way that business is actually done. There is a chance, albeit perhaps only a small one, that Pawlowska thought that to get the relief she sought required paying someone off. Accordingly, Pawlowska's petition for review is DISMISSED for lack of jurisdiction.