In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 04-1339

JELLAL BENSLIMANE,

*Petitioner*,

*v.*

ALBERTO R. GONZALES,

*Respondent*.

———————

On Petition to Review an Order of the
Board of Immigration Appeals.
No. A77 656 393

———————

ARGUED SEPTEMBER 23, 2005—DECIDED NOVEMBER 30, 2005

———————

Before POSNER, RIPPLE, and ROVNER, *Circuit Judges*.

POSNER, *Circuit Judge*.  In the year ending on the date of the argument, different panels of this court reversed the Board of Immigration Appeals in whole or part in a staggering 40 percent of the 136 petitions to review the Board that were resolved on the merits. The corresponding figure, for the 82 civil cases during this period in which the United States was the appellee, was 18 percent. Our criticisms of the Board and of the immigration judges have frequently been severe. E.g., *Dawoud v. Gonzales*, 424 F.3d 608, 610 (7th Cir. 2005) ("the [immigration judge's] opinion is riddled with inappropriate and extraneous comments"); *Ssali v. Gonzales*,

424 F.3d 556, 563 (7th Cir. 2005) ("this very significant mistake suggests that the Board was not aware of the most basic facts of [the petitioner's] case"); *Sosnovskaia v. Gonzales*, 421 F.3d 589, 594 (7th Cir. 2005) ("the procedure that the [immigration judge] employed in this case is an affront to [petitioner's] right to be heard"); *Soumahoro v. Gonzales*, 415 F.3d 732, 738 (7th Cir. 2005) (per curiam) (the immigration judge's factual conclusion is "totally unsupported by the record"); *Grupee v. Gonzales*, 400 F.3d 1026, 1028 (7th Cir. 2005) (the immigration judge's unexplained conclusion is "hard to take seriously"); *Kourski v. Ashcroft*, 355 F.3d 1038, 1039 (7th Cir. 2004) ("there is a gaping hole in the reasoning of the board and the immigration judge"); *Niam v. Ashcroft*, 354 F.3d 652, 654 (7th Cir. 2003) ("the elementary principles of administrative law, the rules of logic, and common sense seem to have eluded the Board in this as in other cases"). Other circuits have been as critical. *Wang v. Attorney General*, 423 F.3d 260, 269 (3d Cir. 2005) ("the tone, the tenor, the disparagement, and the sarcasm of the [immigration judge] seem more appropriate to a court television show than a federal court proceeding"); *Chen v. U.S. Dep't of Justice*, 426 F.3d 104, 115 (2d Cir. 2005) (the immigration judge's finding is "grounded solely on speculation and conjecture"); *Fiadjoe v. Attorney General*, 411 F.3d 135, 154-55 (3d Cir. 2005) (the immigration judge's "hostile" and "extraordinarily abusive" conduct toward petitioner "by itself would require a rejection of his credibility finding"); *Lopez-Umanzor v. Gonzales*, 405 F.3d 1049, 1054 (9th Cir. 2005) ("the [immigration judge's] assessment of Petitioner's credibility was skewed by prejudgment, personal speculation, bias, and conjecture"); *Korytnyuk v. Ashcroft*, 396 F.3d 272, 292 (3d Cir. 2005) ("it is the [immigration judge's] conclusion, not [the petitioner's] testimony, that 'strains credulity' ").

This tension between judicial and administrative adjudicators is not due to judicial hostility to the nation's immigra-

tion policies or to a misconception of the proper standard of judicial review of administrative decisions. It is due to the fact that the adjudication of these cases at the administrative level has fallen below the minimum standards of legal justice. *Niam v. Ashcroft*, *supra*, 354 F.3d at 654. Whether this is due to resource constraints or to other circumstances beyond the Board's and the Immigration Court's control, we do not know, though we note that the problem is not of recent origin. E.g., *Galina v. INS*, 213 F.3d 955, 958 (7th Cir. 2000). All that is clear is that it cannot be in the interest of the immigration authorities, the taxpayer, the federal judiciary, or citizens concerned with the effective enforcement of the nation's immigration laws for removal orders to be routinely nullified by the courts, and that the power of correction lies in the Department of Homeland Security, which prosecutes removal cases, and the Department of Justice, which adjudicates them in its Immigration Court and Board of Immigration Appeals.

In the present case, the Board has ordered an alien who is married to a U.S. citizen removed (deported) because he failed to produce a document that was both peripheral to his claim to be allowed to remain in this country by virtue of his marriage and already in the possession of the immigration authorities. Jellal Benslimane, a Moroccan, entered the United States on a visitor's visa in 1998 and overstayed. The Immigration and Naturalization Service, as it then was—its functions have since been taken over by agencies in the Department of Homeland Security, which was created in 2003—sought to remove him. In February 2003, shortly before the department opened its doors, Benslimane appeared before an immigration judge, admitting removability but claiming that he had married an American citizen two months earlier and that she had filed a petition,

Form I-130, requesting that he be given a visa as a legal resident of the United States.

Besides the visa petition, Benslimane, to be allowed to remain in the United States, was required to file an application, Form I-485, requesting that his status be adjusted from that of illegal immigrant to that of legal resident. 8 U.S.C. § 1255(a)(1); 285 C.F.R. § 245.2(a)(3)(ii). Such an application states the ground for the adjustment sought and furnishes certain other information, see *In re Grand Jury Subpoena*, 341 F.3d 331, 334 (4th Cir. 2003), but the bona fides of Benslimane's marriage—the basis of his application for adjustment—would be determined in the proceeding on the wife's petition. *Drax v. Reno*, 338 F.3d 98, 114 (2d Cir. 2003); see 8 U.S.C. § 1154(a)(1)(A)(i); 8 C.F.R. § 204.2(a)(1); *Orichitch v. Gonzales*, 421 F.3d 595, 596 (7th Cir. 2005). Benslimane's I-485 application was duly filed. The Immigration and Naturalization Service, acknowledging the filing, informed him in writing that it would take 26 months for him to be granted an interview on the application.

Meanwhile the proceedings to remove Benslimane went forward. At his initial removal hearing, conducted in February of 2003, the immigration judge noted that had Benslimane and his wife filed the visa petition and adjustment of status application forms jointly, he could have continued the removal proceeding until the visa petition was adjudicated. *Onyeme v. INS*, 146 F.3d 227, 232 (4th Cir. 1998); *Israel v. INS*, 785 F.2d 738, 740 n. 3 (9th Cir. 1986); *In re Garcia*, 16 I. & N. Dec. 653, 655-57 (BIA 1978). The forms *had* been filed jointly, but had been placed on a different adjudicative track from the removal proceeding. The immigration judge asked the government's lawyer to find out the status of the visa petition and report back to him in 90 days.

At the resumed hearing, held in May of 2003 after the 90 days had expired, the government's lawyer, who was from the agency in the Department of Homeland Security called Immigration and Customs Enforcement, reported that the wife's visa petition was being handled by a different agency in DHS, Citizenship and Immigration Services. The lawyer added that she had no information about the status of the visa proceeding. The immigration judge, although told by Benslimane's lawyer that the wife had filed Benslimane's I-485 application at the same time that she had filed her I-130 petition, told Benslimane to submit his I-485 application to the judge within 60 days.

Benslimane failed to do so, because his lawyer thought that an I-485 form cannot be filed with the immigration authorities until the visa petition has been adjudicated. This was wrong, 8 C.F.R. § 245.2(a)(2)(i)(B), and also very peculiar, since the lawyer, unless he had forgotten, knew that the form had been filed. At any rate, he requested a further continuance to await the adjudication of the visa petition (the I-130). The judge denied the request and ordered Benslimane removed, since adjustment of status was the only basis on which he was resisting removal. Benslimane appealed to the Board of Immigration Appeals. By then, his lawyer had woken up and submitted a copy of the I-485 that Benslimane's wife had filed. Nevertheless the Board affirmed the immigration judge's denial of the motion for a continuance and the resulting order of removal, without mentioning that the original Form I-485 had been filed long before the immigration judge had ordered Benslimane removed.

In effect, then, Benslimane has been ordered removed because he failed to submit a duplicate of the Form I-485 that had been filed six months earlier, that (according to the

government's lawyer at the argument in our court) had not been lost, but that the government lawyer at the removal proceeding had no copy of. We have not been told why the mishandling of the matter by Benslimane's original lawyer was not made the basis for a claim of ineffective assistance of counsel. The Board of Immigration Appeals allows such claims, *Pervaiz v. Gonzales*, 405 F.3d 488, 489-90 (7th Cir. 2005); *Stroe v. INS*, 256 F.3d 498, 501 (7th Cir. 2001), though on conditions that might not have been satisfied here because the Board in *In re Lozada*, 19 I. & N. Dec. 637, 639 (BIA), aff'd, 857 F.2d 10 (1st Cir. 1988), had created a "screen to prevent strategic invocation of ineffective assistance. The screen requires that a motion to reopen deportation pro-ceedings because of ineffective assistance of counsel be accompanied by (1) an affidavit detailing the agreement between the movant and counsel; (2) a showing that the allegations of ineffective assistance were communicated to counsel and that he was given an opportunity to respond to them; and (3) a statement as to whether a complaint was filed against counsel with the appropriate disciplinary authorities and if not why not." *Stroe v. INS*, *supra*, 256 F.3d at 501.

The visa petition remains unadjudicated, though there is no suggestion of foot-dragging on the part of either Benslimane or his wife.

The final decision in this case is the order removing Benslimane, which is nondiscretionary and therefore reviewable by us. *Subhan v. Ashcroft*, 383 F.3d 591, 594 (7th Cir. 2004); see 8 U.S.C. § 1227(a)(1)(C); *Nakamoto v. Ash-croft*, 363 F.3d 874, 880-81 (9th Cir. 2004). But it was precipitated by the denial of his motion for a continu-ance. A ruling on such a motion is discretionary, and the government argues that we have no jurisdiction to review

a discretionary ruling by an immigration judge. We assume, as we did in *Subhan v. Ashcroft*, *supra*, 383 F.3d at 595, that the government's argument is correct in general. See 8 U.S.C. § 1252(a)(2)(B)(ii). But it is not correct in the circumstances of this case, which are similar to those in *Subhan*. There the immigration judge had denied the alien's motion for a continuance, precipitating an order of removal, because through no fault of the alien's the government had not yet acted on his application for a labor certificate that he needed in order to be able to adjust his status to that of legal resident. We held that the denial of the motion had the effect of a substantive ruling on the application to adjust his status and was therefore judicially reviewable.

It is the same here. Benslimane had completed all the formalities required for an adjustment of his status, just like Subhan, but the immigration authorities had, through no fault of his or his wife's, failed as yet to act on his wife's petition. In *Subhan*, the alien's entitlement to a labor certificate hadn't been determined; here the bona fides of the alien's marriage hadn't been determined. An immigration judge cannot be permitted, by arbitrarily denying a motion for a continuance without which the alien cannot establish a ground on which Congress has determined that he is eligible to seek to remain in this country, 8 U.S.C. §§ 1151(b)(2)(A)(i), 1255(a), to thwart the congressional design. The Board of Immigration Appeals so recognized in *In re Garcia*, *supra*, 16 I. & N. Dec. at 654: "We have examined our policy with respect to the disposition of motions to reopen for consideration of adjustment applications based upon as yet unadjudicated visa petitions in light of the present regulation permitting simultaneous filing. In order to give what we consider to be appropriate effect to the simultaneous filing provisions of 8 C.F.R. 245.2(a)(2), as amended, we shall hereafter generally reopen the deportation pro-

ceedings in such cases unless clear ineligibility is apparent in the record."

Other courts have recognized an even broader scope of judicial review of denials of continuances. They have pointed out that section 1252(a)(2)(B)(ii) closes the door only to the review of rulings "the authority for which is specified under this subchapter to be in the discretion of the Attorney General," and that rulings on motions for a continuance are not among those specified (that is, explicitly listed). *Zafar v. U.S. Attorney General*, 426 F.3d 1330, 1334-35 (11th Cir. 2005); *Zhao v. Gonzales*, 404 F.3d 295, 303 (5th Cir. 2005); *Medina-Morales v. Ashcroft*, 371 F.3d 520, 528-29 (9th Cir. 2004). We need not take a position on that interpretation.

At argument the government's lawyer offered a remarkable interpretation of our decision in *Subhan*: that it permits judicial review of the denial of a continuance only if the immigration judge fails to give a reason for the denial. If he gives any reason, however outlandish—even if the reason he gives is that he does not grant continuances when the moon is full—there is no jurisdiction, the lawyer contended, to review the ruling. That would be a senseless distinction, and is not what *Subhan* is about.

When the Board of Immigration Appeals affirmed the order to remove Benslimane, it knew that he had complied with all the requirements for an adjustment of status and was merely awaiting action on his wife's petition. Its decision that he nevertheless be removed forthwith flew in the face of its own decision in *Garcia*, as well as in the face of Congress's "intent [in enacting 8 U.S.C. § 1255] that eligible aliens be able to adjust status without having to leave the United States, to relieve the burden on the United States citizen with whom the aliens had the requisite family or other relationship, on the United States consulates

abroad, and on the alien." *Succar v. Ashcroft*, 394 F.3d 8, 22 (1st Cir. 2005); see also *Randall v. Meese*, 854 F.2d 472, 473-74 (D.C. Cir. 1988). The Board attempted to distinguish *Garcia* on the ground that Benslimane had failed to submit his application for adjustment of status to the immigration judge. But neither had Garcia; his application had been forwarded to the Board (corresponding to the immigration judge here—Garcia's case was already before the Board) by the division of the immigration service in which he had filed it.

The Board's action is intelligible, but not justifiable, only as punishment for a lawyer's mistaken belief that the filing of the I-485 form (which had already been filed!) would be premature. We are not required to permit Benslimane to be ground to bits in the bureaucratic mill against the will of Congress. And anyway punishment was not the rationale of the Board's action, which appears to have been completely arbitrary.

The order of removal is vacated, and we direct the Board to stay removal pending the ruling on the visa petition and completion of the adjustment of status proceeding.

A true Copy:

       Teste:

                                _____

*                            Clerk of the United States Court of Appeals for the Seventh Circuit*