UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 25, 2006
Decided August 24, 2006

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

No. 04-4086

| | |
|---|---|
| LUBINKA BOGDANOV,<br>*Petitioner,*<br><br>    *v.*<br><br>ALBERTO R. GONZALES, Attorney<br>General of the United States,<br>    *Respondent.* | Petition for Review<br>of an Order of the<br>Board of Immigration Appeals<br><br>No. A71 779 582 |

**O R D E R**

In 2003, after eighteen continuances, an immigration judge denied Lubinka Bogdanov's request for a nineteenth one so that she could submit certain documents that were required to support her application for an adjustment of status. The IJ also held that Bogdanov was not eligible for adjustment of status, because of the missing documents. The IJ accordingly ordered that her request for adjustment of status should be deemed abandoned, that her continuance was denied, and that she

be deported to "Yugoslavia."[1] The BIA agreed and affirmed the IJ's order. Bogdanov now appeals from the BIA's order, arguing only that she was entitled to a continuance for good cause and that denying the continuance violated her due process rights. Although we have jurisdiction over this petition, since the judgment of the administrative authority ordered Bogdanov's deportation, the question whether or not to grant the continuance was one committed to the IJ's discretion. Bogdanov has not shown that her case fits within the narrow rule established by our decisions in *Benslimane v. Gonzales,* 430 F.3d 828 (7th Cir. 2005), and *Subhan v. Ashcroft,* 383 F.3d 591 (7th Cir. 2004), in which we explained when we would reverse this kind of ruling. We therefore deny her petition for review.

**I**

The extensive procedural history in this case, spanning at least 20 years, is significant because it demonstrates Bogdanov's lack of diligence in completing her application for adjustment of status. Bogdanov admitted that she initially entered the United States in 1973, without valid documentation. Eighteen years later, in 1991, she received an order to appear before an IJ, but she did not do so until after another five years had passed. At her first hearing, in October 1996, Bogdanov's counsel informed the IJ that Bogdanov had not seen the order to appear. Seemingly unfamiliar with the facts in her case, he also told the IJ that she would need some time to study the statute and to see if she might be eligible for asylum or adjustment status. (She may, in fact, already have applied for adjustment of status under 8 U.S.C. § 1255(i) by that time.) The judge continued the matter until April 1997.

The proceedings dragged on through multiple hearings and continuances. Hearings were held in October 1996, April 1997, September 1997, January 1998, February 1998, August 1998, October 1998, March 1999, July 1999, and October 1999. Some of the continuances were granted on the IJ's own motion, some on Bogdanov's motion, and some at the government's request. The problem seems to have been difficulty in retrieving various documents relating to Bogdanov's criminal history, particularly a theft arrest in Texas. This was hard because she had used at least seven different aliases (not counting alternate spellings or Anglicizations of

---

[1] We note for the record that at the time of the IJ's decision, April 28, 2003, there no longer was a country called Yugoslavia. As of February 2003, what remained of the former Yugoslavia decided to reconstitute itself as a loose federation called Serbia and Montenegro. See CIA World Factbook, https://www.cia.gov/cia/publications/factbook/geos/sr.html. Later, in the spring of 2006, Montenegro voted to separate itself from Serbia, and Serbia announced that it was the successor state to the former federation.

her name) and records evidently existed in New Jersey, Oregon, Florida, Georgia, and Virginia, in addition to Texas and Illinois. By the time of the October 1999 hearing, Bogdanov's counsel had *de facto* withdrawn from the case, having missed two hearings.

More hearings occurred in February 2000, March 2000, June 2000, August 2000, and October 2000. Bogdanov missed the June 2000 hearing because she was serving a Cook County jail term for her Illinois theft conviction. Again, different parties requested the continuances. Bogdanov also missed the October 2000 hearing, but (somewhat remarkably, given this record) the IJ's patience was starting to wear thin. He decided to proceed *in absentia* and ordered Bogdanov deported. Bogdanov then submitted a motion to reopen, arguing that her husband's death and her own failing health had caused her failure to appear. Over the government's objection, the IJ granted the motion and set the case over for a new hearing in July 2002. Several more continuances followed; hearings were held in December 2002 and February 2003.

At the February 2003 hearing, the IJ told Bogdanov and her new lawyer, Richard Trais, that he would continue the case until April 25, 2003, at which time he would take testimony. He ordered that any outstanding documents had to be filed ten days before that date, April 15, "and if the respondent doesn't come back with any of the—doesn't come back, then she will be ordered removed and deported." He made no specific mention of an affidavit of support, which is a document often required for adjustment of status adjudications.

Bogdanov appeared at the April 25 hearing without Trais. After an off-the-record discussion, the IJ announced that he was holding the case over until April 28th. He warned Bogdanov that there were documents missing from her file that should have been submitted by April 15. At this time, he did single out the affidavit of support and an updated medical report. Bogdanov apparently did not heed this advice, because when she and Trais showed up for the hearing on April 28, the documents were still missing. The judge asked Trais whether he had submitted a motion to continue, and Trais replied that he had not, because he had been busy trying to track down Bogdanov's criminal history. Trais then tried to withdraw from the case, but the IJ refused to allow him to do so. Harsh words were exchanged, but when all was said and done, the IJ decided that his earlier instructions had been clear, that Bogdanov had not complied, that the case had gone on long enough, that there was no justification for one more continuance, and that Bogdanov's application for adjustment of status was denied. The BIA affirmed and adopted the IJ's decision, writing a paragraph of its own reviewing the key events.

**II**

Although this is a petition for review from the agency's final order requiring Bogdanov to be removed, the government urges that we have no jurisdiction, because the particular argument Bogdanov is making relates to the denial of the 19th continuance, and the bar on judicial review found in 8 U.S.C. § 1252(a)(2)(B)(ii) for matters committed to the Attorney General's discretion applies to decisions about continuances. Our sister circuits are split on this question. Compare *Yerkovich v. Ashcroft,* 381 F.3d 990, 995 (10th Cir. 2004) (declining to review a discretionary denial of a continuance for lack of jurisdiction); *Onyinkwa v. Ashcroft,* 376 F.3d 797, 799 (8th Cir. 2004); with *Zafar v. U.S. Atty. Gen.,* 426 F.3d 1330, 1334 (11th Cir. 2005) (denying petition for review on the merits after finding that jurisdiction exists). Our position might fairly be described as a middle ground. While we recognize that the statute bars review of most denials of continuances, see *Benslimane, supra,* and *Subhan, supra,* we have also recognized that in some circumstances the denial of a continuance may fall outside the statute. In *Subhan,* for instance, the immigrant diligently attempted to obtain the necessary paperwork to support his application, and he was waiting only for state and federal agencies to act on his application when the IJ denied the continuance. 383 F.3d at 593. We wrote that "[i]f [§ 1252(a)(2)(B)(ii)] is applicable to cases such as this—cases, that is, in which rulings on requests for adjustment of status are precluded by procedural rulings—immigration judges can with impunity refuse to grant one-week continuances to persons in Subhan's position." *Id.* at 595. *Benslimane* is to the same effect. Like petitioner Subhan, Benslimane had completed all of the formalities required for an adjustment of his status, but through no fault of his own, the immigration authorities had not acted. 430 F.3d at 832.

When the immigration agencies have issued an otherwise reviewable order, as the BIA did here, the net result of our cases is that we will recognize the broad discretion that the immigration judges have to grant or deny continuances, but that in extreme situations, where the procedural ruling effectively disposes of the entire case, we may overturn the IJ's decision. Compare *Heckler v. Chaney,* 470 U.S. 821, 831 (1985) ("review [of administrative action] is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion"). We have no trouble here concluding that Bogdanov's cases is not one of those rare ones in which we would second-guess the IJ. Indeed, we find ourselves somewhat astonished at the forbearance that the immigration authorities showed in this case, particularly in light of Bogdanov's checkered history. We also reject Bogdanov's argument (which strikes us as frivolous) that the denial of the continuance violated her due process rights.

The petition for review is **DENIED**.