REINHARDT, Circuit Judge,
with whom PAEZ, Circuit Judge, joins, and with whom GRABER, Circuit Judge, joins as to Part II,
dissenting:
I join in Judge Paez’s dissent, which ably explains why the Chevron Oil test should guide our analysis regarding the adjustment of status issue, and why today’s holding in that regard should apply prospectively only.
I write separately to express my disagreement with the majority’s decision, in Part III(C) of its opinion, to uphold the Attorney General’s regulation automatically terminating voluntary departure in the event that a non-citizen has the temerity to file a petition for review of the BIA’s decision on the underlying issue with the court of appeals. 8 C.F.R. § 1240.26(f). The Attorney General’s regulation effectively penalizes non-citizens for exercising a fundamental right in the American legal system: the right to judicial review of executive action. The regulation is incompatible with the statutory scheme establishing voluntary departure and thus an improper exercise of the powers delegated to the Attorney General. The majority’s decision to uphold the regulation is not only erroneous as a matter of law, but also, ultimately, renders our justice system less worthy of its name.
I.
“The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws.” So proclaimed Chief Justice John Marshall in Marbury v. Madison, one of our country’s earliest cases reviewing executive action. 5 U.S. (1 Crunch) 137, 163, 2 L.Ed. 60 (1803). In the years since, the presumption of judicial review over administrative actions has become a fundamental principle of American law. See INS v. St. Cyr, 533 U.S. 289, 298, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001).
This commitment to judicial review is particularly important in the review of decisions regarding removal. Few decisions will be more consequential in an individual’s life than the decision to forcibly remove him from the country. The relief that a non-citizen seeks from immigration authorities is the last resort that a non-citizen has before being returned, against his will, to a country where he may have no ties or family, or where he may be subjected to imprisonment, torture, or certain death. Recognizing the gravity of such proceedings, we have asserted numerous times that non-citizens in removal hearings are entitled to due process protections under the Fifth Amendment. See Campos-Sanchez v. INS, 164 F.3d 448, 450 (9th Cir.1999). We have explained that, consistent with that entitlement, non-citizens “must receive a ‘full and fair hearing.’ ” Id.
*535 Our court has joined the chorus of circuit courts lamenting frequent errors by Immigration Judges and the Board of Immigration Appeals in the handling of these important cases. See, e.g., Cruz Rendon v. Holder, 603 F.3d 1104, 1111 n. 3 (9th Cir. 2010) (“We are deeply troubled by the IJ’s conduct in this case, which exhibits a fundamental disregard for the rights of individuals who look to her for fairness.”); Mohammed v. Ashcroft, 400 F.3d 785, 792 (9th Cir.2005) (“Not only was the BIA’s opinion an example of sloppy adjudication, it contravened considerable precedent.”); Colmenar v. INS, 210 F.3d 967, 973 (9th Cir.2000) (“Judges do little to impress the world that this country is the last best hope for freedom by displaying the hard hand and closed mind of the forces asylum seekers are fleeing.”); see also, e.g., Benslimane v. Gonzales, 430 F.3d 828, 829-30 (7th Cir.2005) (noting criticism of the BIA and IJ’s by other circuit courts and concluding that the “adjudication of [immigration] cases at the administrative level has fallen below the minimum standards of legal justice”). It is thus not surprising that both the Supreme Court and our court frequently reject interpretations that would eliminate judicial review of these decisions. See, e.g., Kucana v. Holder, 558 U.S. 233, 130 S.Ct. 827, 839-40, 175 L.Ed.2d 694 (2010) (“When a statute is reasonably susceptible to divergent interpretation, we adopt the reading that accords with traditional understandings and basic principles: that executive determinations generally are subject to judicial review.” (internal quotation omitted)); Barrios v. Holder, 581 F.3d 849, 857 (9th Cir.2009); but see Planes v. Holder, 686 F.3d 1033, 1037 (9th Cir.2012) (Reinhardt, J., dissenting from denial of rehearing en banc) (noting the panel’s “inexplicable” decision to permit non-citizens to “be deported immediately after a trial court enters a judgment of guilt against them in a criminal case, before they have had the opportunity to obtain appellate review of their convictions”). ,
Despite all this, the Attorney General’s new regulation imposes drastic consequences on those non-citizens who seek nothing more than to have a court review what may be the single most significant legal action that will ever affect them. Prior to this regulation, a non-citizen who was granted voluntary departure at the conclusion of his removal proceedings was free to seek judicial review of the order requiring him to leave the country, without jeopardizing his voluntary departure.[1] We held that we had the equitable authority to stay the voluntary departure period while a non-dtizen’s petition for review was pending before our court. El Himri v. Ashcroft, 344 F.3d 1261, 1262-63 (9th Cir. 2003); see also Dada v. Mukasey, 554 U.S. 1, 10, 128 S.Ct. 2307, 171 L.Ed.2d 178 (2008) (noting agreement of some other circuits and declining to address the question). The new regulation, which went into effect on the last day of Attorney General Mukasey’s tenure in office,[2] punishes those non-citizens who have been granted voluntary departure for seeking judicial review, by terminating the grant of voluntary departure: “If, prior to departing the United States, the alien files a petition for review ... or any other judicial challenge to the administratively final *536 order, any grant of voluntary departure shall teminate automatically upon the filing of the petition or other judicial challenge .8 C.F.R. § 1240.26® (emphasis added).
The disability imposed by the Attorney General’s new regulation — forcing non-citizens to forgo their voluntary departure and instead depart under an order of removal, simply because they have exercised their right to judicial review — is substantial. A non-citizen gains numerous benefits from not being forcibly removed from the country. Voluntary departure not only permits non-citizens the time and freedom to organize their affairs in the United States before departing, but also provides legal benefits. Non-citizen who depart under an order of removal are barred for ten years from being admitted to the country. See 8 U.S.C. § 1182(a)(9)(A)(ii). Non-citizens who are ordered removed, who have accumulated at least one year of illegal presence in the country, and who later reenter the country are subject to a life-long bar on their presence in the United States. 8 U.S.C. § 1182(a)(9)(C)®.[3] Those who are ordered removed and re-enter are also subject to criminal prosecution. 8 U.S.C. § 1326. None of these consequences, however, apply to individuals who are granted voluntary departure.
It is particularly perverse that the Attorney General, in attempting to deter non-citizens from seeking judicial review, has chosen to target those non-citizens who are granted voluntary departure at the conclusion of their proceedings. The qualifications for such “post-decisional” departure are not easy to meet: non-citizens who have been granted that form of relief must establish that they have been present in the United States for at least one year, that they have been of good moral character for at least the previous five years, that they have not committed certain criminal or other offenses, and that they have both the financial means to depart the country and the intent to do so. 8 U.S.C. § 1229c(b)(l). Of all non-citizens, those present in the country for a substantial period of time, who have been of good moral character, and who have not committed crimes would seem to be those whom the government might want to take the most care to prevent from being erroneously removed, and thus to ensure that they are not dissuaded from seeking judicial review. Yet it is these non-citizens, and only these non-citizens, who are being required to forfeit their right to judicial review under the Attorney General’s regulation.
The Attorney General and the majority defend the regulation by arguing that non-citizens are perfectly free to pursue their petitions for review from abroad. This argument is specious at best. For many non-citizens, the ability to pursue a petition for review from abroad is entirely meaningless. Many non-citizens face persecution, torture, or even death if they return home to their country. For them, the option to return home to face such horrors while a court of appeals considers rectifying any error by the BIA is no option at all.[4] Further, it is far from clear *537 that the Attorney General actually has the capability to effectively return such a non-citizen to the United States in the event that a court (or the BIA upon remand from judicial review) were to grant relief to a non-citizen who departed. The Solicitor General’s office recently admitted that its prior representations to that effect were less than forthcoming. See Letter of April 24, 2012, from Deputy Solicitor General Michael R. Dreeben at 4, Nken v. Holder, 556 U.S. 418, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009) (No. 08-681) (“[T]he government is not confident that the process for returning removed aliens, either at the time its brief was filed or during the intervening three years, was as consistently effective as the statement in its brief in Nken implied.”).[5]
II.
One need not agree with all of the above legal criticisms of the Attorney General’s regulation, however, in order to find that it was not within his authority to enact it. As set forth below, the Attorney General’s regulation is neither a reasonable interpretation of the voluntary departure statute nor, as the Attorney General argues, a permissible exercise of his power to limit “eligibility” for voluntary departure. The regulation must be struck down as ultra vires and unreasonable, and the majority errs in holding to the contrary.
A.
The statutory provision that creates voluntary departure for certain individuals who have been ordered removed (“postdecisional” voluntary departure) nowhere mentions the relinquishment of procedural rights. See 8 U.S.C. § 1229c(b). The Attorney General argues that his interpretation of the statute as containing such a requirement is a permissible exercise of his interpretive authority. Even assuming that the Attorney General’s regulation is entitled to Chevron deference, however, it may be upheld only to the extent that it is “reasonable in light of the legislature’s revealed design.” Ariz. Health Care Cost Containment Sys. v. McClellan, 508 F.3d 1243, 1249 (9th Cir.2007) (quoting United States v. Haggar Apparel Co., 526 U.S. 380, 392, 119 S.Ct. 1392, 143 L.Ed.2d 480 (1999)) (internal quotations omitted). Viewed in this light, it is clear that the Attorney General’s regulation cannot be said to be consistent with Congress’s revealed design of the voluntary departure statute.
Voluntary departure is the name given to two distinct types of statutorily-provided relief from removal. See 8 U.S.C. § 1229c(a), (b). Each type of voluntary departure reflects a careful, congressionally-crafted balance of incentives and obligations. The first form of voluntary departure is available to non-citizens either “in lieu of being subject to [removal] proceedings ... or prior to the completion of such proceedings.” 8 U.S.C. § 1229c(a)(l). This pre-decisional voluntary departure, as suggested by the fact that it must occur before the completion of removal proceedings, necessarily involves the relinquishment of certain procedural rights, including the right to petition for review. Thus, as the Attorney General has made clear, eligibility for this type of pre-decisional voluntary departure naturally requires that a non-citizen forgo the opportunity to apply for other types of relief from removal, such as an application for asylum, relief under the Convention Against Torture, or cancellation of removal. See In re Arg *538 uelles-Campos, 22 I. & N. Dec. 811, 814-16 (BIA 1999) (“If an alien applies for voluntary departure before the conclusion of removal proceedings, no additional relief may be requested. If additional relief has been requested, such a request must be ■withdrawn.”); 8 C.F.R. § 1240.26(b)(1)(i)(B). This also naturally requires that a non-citizen waive his right to petition for review of any issues regarding the removal proceedings. See 8 C.F.R. § 1240.26(b)(1)(i)(D).
The second form of voluntary departure, however, had not — at least, until the time of Attorney General Mukasey’s regulation-been thought to involve the relinquishment of procedural rights. Rather, this second, post-decisional form of voluntary departure was available to all non-citizens “at the conclusion” of removal proceedings, regardless of whether they subsequently decided to seek judicial review. 8 U.S.C. § 1229c(b). As explained above, our circuit joined many others in finding that such voluntary departure was entirely consistent with judicial review. In accordance with the fact that post-decisional voluntary departure requires the government to expend additional resources pursuing a non-citizen’s removal, the eligibility requirements for such post-decisional voluntary departure are significantly heightened. Although the eligibility requirements for pre-decisional voluntary departure are not particularly onerous,[6] Congress rendered the eligibility requirements for post-decisional voluntary departure substantially more difficult to meet, requiring a mandatory length of presence in the United States and good moral character, and imposing other significant conditions. 8 U.S.C. § 1229c(b)(l). Congress thus limited post-decisional voluntary departure to only a small subset of the non-citizens who complete removal proceedings. Consistent with this principle, Congress also differentiated between the forms of relief available under each type of voluntary departure. Whereas non-citizens granted pre-decisional voluntary departure may be given up to 120 days to voluntarily depart the country, and are not categorically required to post-a bond, 8 U.S.C. § 1229c(a)(2)(A), (a)(3), non-citizens granted post-decisional voluntary departure are given only 60 days to depart, and are required by statute to post a bond for the costs of their departure, 8 U.S.C. § 1229c(b)(2)-(3).
The BIA has recognized the important distinction between these two statutory forms of relief, despite the fact that they have the same name:
It is clear from the significant differences between voluntary departure under sections 240B(a) and 240B(b) of the Act [respectively, 8 U.S.C. § 1229c(a) and (b) ] that Congress intended the two provisions to be used for different purposes. While the requirements for voluntary departure under section 240B(b) resemble those of voluntary departure under former section 244(e) in deportation proceedings, section 240B(a) requires much less from the alien. Under section 240B(a), an alien need not show that he has good moral character or that he has the financial means to depart the United States. An alien must request section 240B(a) relief either in lieu of being subject to proceedings, or early in *539 removal proceedings. He must also voluntarily forego all other forms of relief. Thus, Immigration Judges can use section 240B(a) relief to quickly and efficiently dispose of numerous cases on their docket, where appropriate. We accept the need for such a tool and support its purpose.
Arguelles-Campos, 22 I. & N. Dec. at 817. The BIA thus has recognized that not only did Congress purposefully intend to draw an important distinction between these two types of relief, but that the relinquishment of procedural rights was central to the distinction between the two.
With this new regulation, however, the Attorney General has violated that congressional design, by inserting a requirement for the relinquishment of procedural rights into the post-decisional voluntary departure process. Although, in some instances, it might be appropriate for an agency to read substantive provisions into congressional silence, here, Congress’s “revealed design” forbids the Attorney General from doing so. See Haggar Clothing, 526 U.S. at 392, 119 S.Ct. 1392 (“[A] court may conclude the regulation is inconsistent with the statutory language or is an unreasonable implementation of it. In those instances, the regulation will not control.”). The Attorney General could not subvert the statutory design by, for example, limiting pre-decisional voluntary departure to only those non-citizens who are eligible for post-decisional voluntary departure, so as to essentially eliminate the distinction between eligibility for the two forms of statutory relief. See Arguelles-Campos, 22 I. & N. Dec. at 817 (enumerating the different eligibility requirements as a hallmark of the “different purposes” Congress intended for each form of voluntary departure). The Attorney General is equally barred from eliminating the distinction between the procedural prerequisites for these two forms of relief, by requiring the relinquishment of the right to judicial review as part of exercising the statutory entitlement to post-decisional voluntary departure.
Thus, the Attorney General’s regulation automatically terminating voluntary departure is simply inconsistent with the statutory scheme. It cannot be upheld as a permissible exercise of the Attorney General’s authority to interpret the voluntary departure statute.
B.
The Attorney General seeks to defend his regulation by pointing to 8 U.S.C. § 1229e(e), which permits him, by regulation, to “limit eligibility for voluntary departure under this section for any class or classes of aliens.” The majority essentially suggests that this provision constitutes carte blanche for the Attorney General to prohibit voluntary departure in any way he pleases and at any time he pleases, including after final administrative action affirming a grant of voluntary departure. In doing so, it errs.
The majority’s reading is contrary to the unambiguous command of the statute, which, by its very terms, grants the Attorney General authority to limit only “eligibility” for voluntary departure. The plain meaning of the term “eligibility” simply does not encompass a condition, such as the one here, predicated on a non-citizen’s future actions — that is, a condition predicated on events that are unknown and unknowable at the time that a determination is made. Rather, the meaning generally implies some ascertainable state of being at the time that the particular decision for which eligibility is relevant is made. Thus, for example, Black’s defines the term as “[f]it and proper to be selected or to receive a benefit.” Black’s Law Dictionary 597 (9th ed. 2009) (emphasis add *540 ed). The use of the present tense in that definition is no mistake, because “eligibility” simply does not encompass the fitness to have been selected, or to have received a benefit. “Eligibility” might encompass events that will occur in the future but whose status is presently determinable. It cannot, however, encompass the type of future condition in the Attorney General’s regulation, which can only be described as a ground for termination of voluntary departure.[7]
Under the plain meaning of the term, the determination of “eligibility” is made when the immigration judge grants voluntary departure. If the Attorney General has exercised his discretion to limit eligibility for a “class” of which the non-citizen is a member, the individual seeking voluntary departure will be ineligible to be awarded that relief. Otherwise, he, like the non-citizen here, is eligible and may be granted such relief, if he otherwise qualifies.
Although the distinction may occasionally be elusive, the difference between a condition for “eligibility” and a condition for “termination” is not as trivial as the majority suggests. Neither the majority nor the government contends that a violation of the other eligibility criteria for voluntary departure (e.g., good moral character) after the immigration judge has granted the non-citizen voluntary departure would constitute grounds for a determination that the non-citizen is not eligible. Nor does either point to any case to that effect.[8] In fact, another regulation issued by the Attorney General suggests just the opposite: that “eligibility” refers to a condition identifiable at the time that voluntary departure is granted. The regulation permits the Attorney General to revoke voluntary departure — that is, to declare it as having been improperly granted in the first place — but only upon finding that the application “should not have been granted.” 8 C.F.R. § 240.25(f) (emphasis added). This regulation provides no permission to revoke voluntary departure for a newly-arising condition which, if originally present, would have kept a non-citizen from receiving voluntary departure. If “eligibility” had the broad meaning ascribed to it by the majority, there would be no need for this regulation to be so circumscribed.
Indeed, our procedural due process jurisprudence recognizes that the distinction between the conditions relevant to eligibility and to termination is an important one, fundamental to the very existence of vested interests in life, liberty, and property. As the Supreme Court held in Logan v. Zimmerman Brush, “While the legislature may elect not to confer a property interest, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards.” 455 U.S. 422, 432, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) (internal quotations marks and alterations omitted). *541 Permitting the executive to eliminate the distinction between the two legal concepts would “allow the State to destroy at will virtually any state-created [ ] interest” by claiming that its deprivation was simply a condition of the right having been granted in the first place. Id.
This majority’s decision is contrary to the plain text of 8 U.S.C. § 1229c(e). There is simply nothing in that provision, or any other statutory provision to which the majority or the Attorney General can point, to suggest that, when Congress permitted the Attorney General to regulate eligibility requirements for voluntary departure, it also intended to permit him to terminate voluntary departure once it was granted, or to enact a regulation to that effect. The majority errs in granting the Attorney General that authority — and, in the process, by eviscerating the important distinction between eligibility for a' right and the termination of that right.
C.
Perhaps in recognition of the weakness of the Attorney General’s rationale, the majority offers its own interpretation of the voluntary departure statute as support for the Attorney General’s authority to promulgate the regulation. Its reading of the statute, however, is, in my view, unreasonable, clearly in error, and directly contrary to the manner in which the Attorney General construes the statute. Certainly, the Attorney General does not — and in all likelihood would not — urge the adoption of the majority’s rationale, and the majority errs in sua sponte making it the law of this circuit.
The majority reads the voluntary departure statute as requiring two different actions at two different times by two different actors — despite the fact that this is not, and has never been, the law; nor has it ever been the manner in which voluntary departure has been implemented. The majority states that the immigration judge must first enter an order granting voluntary departure upon finding that the non-citizen meets the statutory requirements and is “eligible” for relief. The majority then states that there is a second and subsequent step, which, it contends, occurs “after [voluntary departure] has been granted by the immigration judge” (emphasis added), at which the Attorney General “may permit” the non-citizen to voluntarily depart. The majority contends, as a result of this second step, that the Attorney General “may” for any reason “permit” or deny voluntary departure after it has been granted by the immigration judge and/or the Board of Immigration Appeals. According to the majority, the Attorney General may do so for any reason and at any time until the non-citizen has actually departed the country (or even, potentially, afterward). It is on the basis of this definition of “permit” that the majority argues that the statute affords the Attorney General the right to “terminate” the grant of voluntary departure — an authority that the Attorney General himself does not purport to possess, other than to the extent that he may do so by “limit[ing] eligibility ... for any class or classes of aliens.” See discussion supra Part 11(B).
The majority entirely misapprehends the voluntary departure scheme. The language in the voluntary departure statute stating that the Attorney General “may permit” a non-citizen to voluntarily depart simply affords the Attorney General — or, in practical terms, his delegees — discretion to grant or deny voluntary departure at the completion of the immigration proceeding to the non-citizen if he has been determined to be eligible for that relief under the statute. See Bazua-Cota v. Gonzales, 466 F.3d 747, 748 n. 1 (9th Cir.2006) (noting that, under 8 U.S.C. § 1252(a)(2)(B)(i), *542 we lack jurisdiction to review the Attorney General’s discretionary decision regarding voluntary departure). There are not two steps in this process separate in time and determined by two different government officials. Rather, the immigration judge, the Attorney General’s delegee, both determines whether the non-citizen has satisfied the statutory requirements for voluntary departure and is therefore “eligible” for such relief and, at the same time, under the authority delegated to him by the Attorney General, exercises that official’s discretion to grant or deny that relief. See 8 C.F.R. § 1240.26(c) (providing for grant of voluntary departure by an immigration judge). If the immigration judge determines that the non-citizen is eligible and decides to exercise the discretionary authority to grant relief, an order of voluntary departure is issued. In fact, there can be no grant of voluntary departure until the Attorney General has exercised his discretion and decided to grant the non-citizen that relief. The Board of Immigration Appeals (another of the Attorney General’s delegees) may, on appeal, review the grant of voluntary departure and may either affirm the order or reverse it after determining either that the non-citizen is not, in fact, eligible for that relief under the statute or that the immigration judge improperly exercised his discretion in granting the relief (an administrative review that, incidentally, is not mentioned in the majority’s description of the voluntary departure scheme). Often, however, the only and administratively final decision regarding voluntary departure will be the one made by the immigration judge, finding that the non-citizen is eligible for such relief and exercising the Attorney General’s discretion to “permit” the non-citizen to voluntarily depart.
The majority errs in converting language that does nothing more than confer discretion on the Attorney General to grant voluntary departure when a non-citizen is found to be eligible for that relief into a free-floating power to terminate voluntary departure at any time, even after the grant of that relief has become administratively final following his exercise of his discretion. One might imagine that such broad authority possessed by the Attorney General would find ample support in numerous precedents in our jurisprudence. It does not; nor does the underlying reading of the statute that the majority advances.[9] The majority points to no case *543 recognizing the broad and sweeping authority it gives the Attorney General to terminate voluntary departure after it has been finally granted.[10]
The majority reads the words in the voluntary departure statute beyond their sensible meaning, in the hope of supporting its dubious account of the Attorney General’s powers that it must in order for the voluntary departure regulation to stand. Its reading is in error, and its decision, based upon this erroneous reading, would aggrandize the powers of the Attorney General beyond even his own desired reach, in a manner that is as unsupported as it is unwise.
D.
Another provision in the Attorney General’s regulation raises an important question that goes unaddréssed by the majority. A subsequent portion of 8 C.F.R. § 1240.26® provides that a non-citizen who seeks judicial review, and whose voluntary departure is, as a result, automatically terminated, “will not be deemed to have departed under an order of removal if the alien departs the United States no later than 30 days following the filing of a petition for review,” id., in other words, not later than 30 days after his entitlement to voluntarily depart has automatically terminated.[11] If such an individual has not voluntarily departed,[12] and has not depart *544 ed pursuant to an order of removal, what statutory provision governs his departure, and what conditions govern his future rights and disabilities?
It is far from clear that the Attorney General possesses the authority to create this new form of departure. The Attorney General did not cite to any such authority in its rule-making or its briefs before this court. See generally 73 Fed.Reg. 76, 927 (Dec. 18, 2008) (final rule); 72 Fed.Reg. 67, 674 (Nov. 30, 2007) (proposed rule). This lack of express authority is troubling in light of Congress’s statement that the statutory procedures governing removal are the “sole and exclusive” procedures by which a non-citizen may be removed from the country. 8 U.S.C. § 1229a(a)(3).
Finally, I note that I do not read the majority opinion to foreclose the possibility that the 30-day departure period following automatic termination, created as part of this new form of departure, may be stayed. The regulation clearly intends that we would have no authority to stay voluntary departure because, by virtue of the automatic termination, “there would no longer be any period of voluntary departure to be stayed or tolled during the pendency of the judicial review.” 72 Fed.Reg. at 67,682. This logic would seem insufficient, however, to constrain our authority with regard to the new, 30-day departure period, which follows the automatic termination of the voluntary departure period. As the majority concedes, we retain equitable discretion “unless a statute clearly provides otherwise.” United States v. Oakland Cannabis Buyers’ Coop., 532 U.S. 483, 496, 121 S.Ct. 1711, 149 L.Ed.2d 722 (2001). The same principles that caused us to find that voluntary departure could be stayed in the first place might well support an argument that this new, 30-day departure period could also be stayed pending judicial review. Because Garfias-Rodríguez sought only a stay of his voluntary departure, however, and did not seek a stay of the new, unacknowledged, and unnamed 30-day departure period provided under this new form of departure, the question does not appear to be properly presented to us at this time. It will assuredly arise in the future, however.
III.
The majority fails to recognize that there is, quite simply, no statutory authority for the Attorney General’s regulation. The regulation conflicts with the congressional design, as expressed in the statutory scheme creating two distinct forms of voluntary departure, and finds no source in the statutory provision permitting the Attorney General to limit “eligibility” for voluntary departure. Further, there remains a serious question regarding the Attorney General’s ability to create a new form of departure permitting non-citizens to depart, after their voluntary departure has terminated, without being removed. The majority thus errs in upholding this regulation as a legitimate exercise of the Attorney General’s power.
I do not envy the immigration lawyer who must explain to his client the unconscionable logic inherent in the Attorney General’s regulation. An immigrant’s experience with our legal system is likely to be among his last — and most lasting — impressions of our country. It hardly becomes a nation that pledges its allegiance to providing “liberty and justice for all” to forfeit the rights of non-citizens who do no more than seek a decision from our court.
I respectfully dissent.

. As explained below, non-citizens who are granted '‘pre-decisional'' voluntary departure (that is, either prior to or during removal proceedings), and who forgo all other claims for relief, necessarily waive their right to appeal.

. See Voluntary Departure: Effect of a Motion To Reopen or Reconsider or a Petition for Review, 73 Fed.Reg. 76, 927, 76, 927 (Dec. 18, 2008) (final rule) (“This rule is effective January 20, 2009.”).

. Both of these bars are subject to waiver, although only at the discretion of the Attorney General or the Secretary of Homeland Security, and, in the case of the lifetime bar, only after 10 years. See 8 U.S.C. § 1182(a)(9)(A)(iii), (a)(9)(C)(ii).

. In addition, this defense offers no answer to the other regulation, enacted as part of the same rule-making process, that terminates voluntary departure upon a non-citizen's filing of a motion to reopen. 8 C.F.R. § 1240.26(e)(1). Motions to reopen terminate automatically upon a non-citizen’s departure from the country. See Dada v. Mukasey, 554 U.S. 1, 5, 128 S.Ct. 2307, 171 L.Ed.2d 178 *537 (2008) ("departure has the effect of withdrawing [a] motion to reopen”).

. Available online at http://online.wsj.com/ public/resources/documents/return.PDF.

. The only non-citizens rendered ineligible for such departure are those who have been convicted of an aggravated felony or those who have engaged in (or been associated with) terrorist activities. 8 U.S.C. § 1229c(a)(l). In addition, non-citizens who are arriving in the United States and who are placed in removal proceedings may not apply for prehearing voluntary departure, although they may voluntarily withdraw their applications for admission. 8 U.S.C. § 1229c(a)(4).

. The Attorney General does not contend that he has the authority to terminate voluntary departure, separate from his ability to create conditions on eligibility. He does not assert — as the majority does, without citing any support for the proposition — that his discretion over the grant of such departure would permit him to terminate it on any ground, once it has been granted. Rather, the Attorney General contends that “the authority for this regulation is clearly rooted in the Attorney General's explicit statutory power to limit the class of aliens who are eligible for voluntary departure” (emphasis added).

. When, if ever, an award of voluntary departure may be terminated prior to its expiration date for wrong-doing or misrepresentation (aside from grounds existing at the time voluntary departure was granted) is another matter, one that is not raised by the Attorney General. See n.7, supra.

. The majority offers two out-of-circuit cases to buttress its reading of the voluntary departure statute as involving two distinct steps. Neither does so.
The Second Circuit's decision in Muigai holds only that, after voluntary departure has been granted and the time period for departing has expired, the Attorney General (or his delegees) may make a discretionary and unreviewable decision whether to extend that period. Muigai v. INS, 682 F.2d 334, 337 (2d Cir.1982). Muigai thus says nothing about the sequence of decision-making in the ordinary administrative proceeding (that is, when the time for voluntary departure has not expired, and thus provides no support at all for the majority's reading of the statute.) (Muigai is, of course, even less relevant today, now that the Attorney General's authority to extend the voluntary departure period has been eliminated (a fact the majority is acutely aware of). See Dada, 554 U.S. at 9-10, 128 S.Ct. 2307.)
The Tenth Circuit’s decision in Van Dinh, admittedly, does make the distinction that the majority urges between an order by the Immigration Judge and a later, and discretionary, decision by the Attorney General. However, it does so in language that we have squarely recognized as dicta, see Spencer Enterprises, Inc. v. United States, 345 F.3d 683, 691 (9th Cir.2003) (“this interpretation was entirely unnecessary to the Tenth Circuit’s holding”), in support of two propositions that we have squarely rejected: (1) that subsection (£) of the voluntary departure statute, 8 U.S.C. § 1229c(f), does not strip us of jurisdiction over the discretionary aspect of the decision to deny voluntary departure, see Esquivel *543 Garcia v. Holder, 593 F.3d 1025, 1030 (9th Cir.2010) (citing that provision for the proposition that we "lack jurisdiction to review" the Attorney General’s "discretionaiy determination” regarding voluntary departure), and (2) that 8 U.S.C. § 1252(a)(2)(B)(ii)'s jurisdiction-stripping provision extends to decisions for which the discretionary authority is not established by statute, see Kucana, 130 S.Ct. at 839-40 ("To read § 1252(a)(2)(B)(ii) to apply to matters where discretion is conferred on the Board by regulation, rather than on the Attorney General by statute, would ignore [] congressional design.”); Spencer, 345 F.3d at 691. I strongly doubt the majority wishes to reverse these well-established holdings rejecting the consequences of the Tenth Circuit’s decision.

.The majority’s analogy to asylum highlights the very distinction between discretion and termination that it refuses to recognize. The Attorney General may, in fact, terminate a grant of asylum — not because he has discretion to grant or deny that benefit, but because Congress has specifically authorized the Attorney General to “terminate!]” asylum in certain circumstances. 8 U.S.C. § 1158(c)(2). No such authorization can be found in the voluntary departure statute.
The asylum cases cited by the majority do not support its argument; to the contrary, they prove our point. The cases simply recognize that, when the Attorney General (or one of his delegees) finds, at the end of an asylum proceeding, that a non-citizen does not meet the eligibility criteria for asylum, there is no need for him to decide in that proceeding whether the non-citizen merits the favorable exercise of his discretion. Accordingly, when we reverse the Attorney General’s determination regarding lack of statutory eligibility, we must remand for him to exercise in the remanded proceeding the discretion that he failed to exercise, but otherwise would have, in the initial proceeding. These cases say nothing about the Attorney General's ability to terminate asylum after it has been granted.

. A non-citizen who departs under this provision must also "provide!] to DHS such evidence of his or her departure as the ICE Field Office Director may require, and provide!] evidence DHS deems sufficient that he or she remains outside of the United States.” Id.

. Any grant of voluntary departure has been "terminated” automatically upon filing of the petition for review. See Patel v. Att’y Gen., 619 F.3d 230, 234 (3d Cir.2010) (noting lack of authority to stay voluntary departure under the new regulation because "the grant has already terminated”); Voluntary Departure: Effect of a Motion To Reopen or Reconsider or a Petition for Review, 72 Fed.Reg. 67, 674, 67, 682 (Nov. 30, 2007) (proposed rule) ("Under this rule, since the grant of voluntary departure would be terminated automatically if the alien elects to file a petition for review, there would no longer be any period of volun *544 tary departure to be stayed or tolled during the pendency of the judicial review.”).